STEPHAN, Judge.
Robert Stephan, the owner of a video machine used for gambling, appeals from an order entered by the Circuit Court of the City of St. Louis declaring the machine forfeited to the state. We affirm.
In March, 1982, appellant contracted with Rena Shoults, owner of the tavern Rena’s Den, to place a video poker machine in her tavern. On July 20, 1982, St. Louis Police Detective Raymond Gibson went to Rena’s Den, where he observed the machine which was activated by placing quarters into the coin slot. Detective Gibson watched two men, Anthony Shaver and another named Bill, play the machine. Upon winning forty replays, they informed the barmaid, Marsha Davis; she told them that she would have to get approval from the tavern owner to pay them. Mr. Shaver then spoke with the owner, Ms. Shoults, and he returned to the barmaid to inform her that it was all right for her to pay them. The barmaid then gave Shaver two five dollar bills and pushed a button behind the bar which removed the forty free replays from the video poker machine.
Detective Gibson returned to Rena’s Den on July 23, 1982, at which time he observed Ms. Shoults remove money from the poker machine and place it in a cigar box. Gibson then played the machine and, after $15.00 worth of play, amassed forty replays and so informed the barmaid, Marsha Davis. At her request, Anthony Shaver went upstairs to get approval from Rena Shoults. Shaver returned, conferred with Marsha, and gave Gibson ten dollars from the cash register. Marsha then used the “knock off” button under the bar to remove the forty replays from the machine. Detective Gibson, with other officers, seized the video poker machine and arrested Harry Shoults, Rena Shoults, Marsha Davis, and Anthony Shaver.
The four defendants were charged with misdemeanors and pleaded not guilty. They agreed, however, to submit the question of their guilt to the court on the police reports made of the incidents which were treated as a stipulation of facts. Each was found guilty and given a suspended imposition of sentence. In three of the four eases, the state filed an ancillary motion *294 for forfeiture of the video game machine in accordance with § 572.120, RSMo 1978. The investigation detailed in the police reports revealed that the owner of the machine, appellant Robert Stephan, would regularly visit the tavern and inspect the record keeping mechanisms in the machine. By so doing, he could determine how many games were “knocked off” and, thus, the amount paid out by the tavern owner. That amount was then deducted from the amount of money in the machine and returned to the tavern owner; the balance was then divided equally between the tavern owner and appellant.
Appellant testified, however, that he did not know that cash payoffs were being made by the tavern owner, that he had cautioned against such practices, and under the terms of his rental contract with the tavern owner such conduct was prohibited. He admitted that he visited the tavern weekly, but that he simply removed the cash from the machine so as to split it with the tavern owner as provided in the contract. The trial court, nevertheless, ordered forfeiture of the machine to the state.
Appellant’s basic contentions are that the trial court erred in ordering the forfeiture because the machine is not a gambling device and, in any event, there is no evidence that he was aware of how the machine was being used.
A “gambling device” is defined statutorily as being “any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine.” § 572.010(5), RSMo 1978 (Emphasis added). A necessary ingredient of gambling, however, is “an agreement or understanding that he [the player] will receive something of value in the event of a certain outcome.” § 572.010(4), RSMo 1978. That same subsection concludes with the provision, “nor does gambling include playing an amusement device that confers only an immediate right of replay not exchangeable for something of value; ...” The foregoing is but a legislative articulation of earlier judicial determinations that a free replay won on a pinball machine, in itself, is not something of value; and the mere playing of such machines does not constitute gambling. State v. One “Jack and Jill” Pinball Machine, 224 S.W.2d 854 (Mo.App.1949); Masters v. Kansas City, 294 S.W.2d 366 (Mo.App.1956). In the instant case, however, the ten dollar pay-offs in exchange for the player’s surrendering forty replays, all of which was facilitated by the “knock-off” button, cause the machine to be a “gambling device.”
Similarly, we reject appellant’s arguments that the game is not one of chance, but of skill. This on the strength of the definition of “contest of chance” found in § 572.010(3): “... any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that the skill of the contestants may also be a factor therein; ...” The game as described by the police reports, as well as the testimony of the officers, the operations manager of machine’s manufacturer, and appellant himself is essentially five card, draw poker, based on a standard fifty-two card deck programmed into a computer to appear at random on a screen. A pair of “Queens or better” is required to win. Play is initiated by the insertion of one or more quarters, at which time five cards appear on the screen. Insertion of more than one quarter increases the number of replays to be awarded for a winning hand. The player may discard any or all of the cards by pressing a button, whereupon replacements are received. At that point, it is determined whether the player has won or lost, wins being rewarded by free replays. There is a measure of skill involved in deciding which cards to hold or discard and in weighing the probabilities of drawing better cards. We have no difficulty in determining, however, that “the outcome depends in a material degree upon an element of chance,” as that phrase is used in the statute quoted above.
Appellant’s argument that his ignorance of the payoffs prevents forfeiture of the machine overlooks the fact that the motions for forfeiture were filed in the misdemeanor cases which, in turn, were submitted on the police reports as stipulations of fact. As indicated above, the reports clearly indicate that appellant did have knowledge of the payoffs, and the trial court was certainly not bound by his later testimony to the contrary. A stipulation of fact dispenses with proof of the matters stipulated. Furniture Forwarders of St. Louis, Inc. v. Chicago, Rock Island and Pacific Railroad Company, *295 393 F.2d 537, 538 (8th Cir.1968). Having stipulated to facts, a party waives his right to any subsequent contention to the contrary. Sears, Roebuck and Co., v. Hupert, 352 S.W.2d 382, 385 (Mo.App.1961). When the stipulation was made, the res involved here was before the court, through its owner and counsel, just as surely as the defendants. Had appellant’s trial counsel, who also represented the misdemeanor defendants, limited the scope of the stipulation to the expected testimony of the writers of the reports, evidence of appellant’s knowledge would arguably be hearsay. It is clear from the reports that the sources of the information were not the police officers but persons other than the appellant who were interviewed by them.
We need not, however, dispose of this point on what may have been an oversight on the part of counsel. Our examination of the statutes authorizing the forfeiture persuades us that actual knowledge of the owner is not a prerequisite of such an order. Section 572.120, RSMo 1978, provides in part, “Any gambling device ... possessed or used in violation of this chapter may be seized by any peace officer and is forfeited to the state.” (Emphasis added.) This language alone would warrant the conclusion that possession or use, without any regard to ownership, effects the forfeiture and that sole purpose of subsequent litigation is simply to determine whether such possession or use occurred.
Furthermore, § 572.120 continues: “Forfeiture procedures shall be conducted as provided by rule of court.” The operative rule is 34.01 which states, “The provisions of Chapter 542, RSMo, shall govern procedure in searches and seizures.” Section 542.301-2(1), RSMo, the full text of which is set forth in the margin,[1] reads in pertinent part, “property, the possession of which is an offense under the laws of this state ..., or which any statute authorizes ... to be seized, ... shall be forfeited to the state of Missouri.”
As we have determined, the video poker machine involved here, because of its use, is a gambling device; and possession of a gambling device is a class A misdemeanor. § 572.070, RSMo 1978. Additionally, § 572.120, RSMo 1978, specifically authorizes the seizure of any gambling device. For these reasons, the machine was properly ordered forfeited under the provisions of § 542.301-2(1), supra.
Appellants cite two Missouri cases which involve the forfeiture of motor vehicles used to transport controlled substances. We do not find them persuasive. In State ex rel. Reid v. Kemp, 574 S.W.2d 695 (Mo.App.1978), forfeiture of an automobile to the state was reversed and the cause remanded to permit the owners of the vehicle to present evidence that they were unaware that their son was transporting marijuana at the time he was arrested for driving while intoxicated. Similarly, forfeiture of an automobile in which was found 2.1 grams of marijuana was reversed in State v. Jones, 637 S.W.2d 337 (Mo.App.1982). The disposition of both of those cases was influenced by § 195.145-4, RSMo 1978, which provides, with respect to forfeiture of any conveyance used in connection with a violation of the drug laws, “The court shall render such judgment as to it seems meet and just” under the circumstances. And the Kemp case turned on the fact that a subsequent provision of § 195.-145-4 specifically contemplates a defense that the owner was ignorant of the illegal use of his vehicle. The General Assembly did not, however, provide for such a de *296 fense with respect to a “gambling device,” and we decline to create one.
The judgment is affirmed.
GAERTNER, P.J., concurs.
SMITH, J., concurs with separate opinion.

. 2.(1) Weapons, tools, devices, and substances other than motor vehicles, aircraft, or watercraft, used by the owner or with the owner’s consent as a means for committing felonies other than the offense of possessing burglary tools in violation of section 569.180, RSMo, and property, the possession of which is an offense under the laws of this state or which has been used by the owner, or used with his acquiescence or consent, as a raw material or as an instrument to manufacture or produce anything the possession of which is an offense under the laws of this state, or which any statute authorizes or directs to be seized, other than lawfully possessed weapons seized by an officer incident to an arrest, shall be forfeited to the state of Missouri.