In re the MARRIAGE OF Lewis
HENDRIX and Kimberly
Ann Hendrix,

Lewis Hendrix, Respondent,

v.

Kimberly Ann Hendrix, Appellant.

No. SC 86938.

Supreme Court of Missouri,
En Banc.

Feb. 14, 2006.

Mark J. Murphy, J. Michael Murphy, Liberty, for Appellant.

James R. Royce, Springfield, for Respondent.

LAURA DENVIR STITH, Judge.

Kimberly Hendrix (Mother) appeals the trial court's refusal to set aside its judgment modifying custody of her two children so as to make the home of Father, Lewis Hendrix, their residence for mailing and educational purposes. She argues

that the judgment modifying custody was void under section 452.410 [1] and Rule 74.06 because based on stipulated facts rather than on facts developed at an evidentiary hearing.

This Court affirms the judgment. The modification was not based merely on a stipulation of Mother and Father that a change of circumstances had occurred that required a modification of custody arrangements. Rather, after notice and an opportunity for hearing, the parties presented the court with sufficient, uncontested facts—set out in a parenting plan and in the proposed judgment and the stipulation signed by both the parties and the guardian *ad litem* (GAL)—to support the modification. This included facts showing that Mother had moved out of the marital home, leaving the children there in Father's care, and other facts underlying the court's determination that a change of circumstances had occurred sufficient to support modifying custody and making the children's address for mailing and educational purposes that of Father. The parties did not dispute the facts on which the modification was based or suggest, prior to entry of the order, that a hearing was necessary to establish additional facts. In these circumstances, section 452.410 did not require the trial court to hold an evidentiary hearing *sua sponte*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father separated in September 1998. Their March 1999 judgment dissolving their marriage gave them joint legal custody, but gave Mother "primary" physical custody and granted Father substantial visitation.[2] The parties returned to living together and sharing expenses almost immediately, however, and in September the court modified the judgment to eliminate provisions ordering Father to pay child support.[3]

Mother and Father continued to live together in the family home in Marshfield, Missouri, until January 2003, when Mother moved out, leaving the children with Father. He then filed a motion to modify and proposed parenting plan in which he asked that he be given "primary" physical custody. The motion alleged Mother had left the children in Father's care in the marital home and that she stated she would keep Father from seeing the children. Mother filed a counter-motion and parenting plan proposing that she be given physical custody and Father have only visitation rights.

A hearing on the motions to modify was set for May 27, 2003. That hearing was never held, however, because on that date, at the parties' request, the GAL prepared and presented to the court a short stipulation, signed by both parties, agreeing to joint physical and legal custody as follows:

> The parties do hereby agree and stipulate to the following conditions regarding custody and support of their minor children:

1. All statutory citations are to RSMo 2000 unless otherwise indicated.

2. The reference to "primary" physical custody is inappropriate. Section 452.375 permits either sole or joint custody; a parent may no longer be granted "primary" legal or physical custody. *See, e.g., Speer v. Colon*, 155 S.W.3d 60, 62 n. 11 (Mo. banc 2005).

3. The original parenting plan provided that Father was to have the children every other weekend, one overnight a week, and any other night Mother attended classes. For unexplained reasons, the parties' later motions to modify and the court's July 22, 2003, order refer to the initial dissolution decree entered in March 1999 rather than the modification order entered in September 1999.

1. The parties shall share joint legal and joint physical custody;
2. There shall be no child support paid to either party, and Father shall maintain health insurance on the children;
3. Parenting time with the children shall be as follows:

    *Parties will prepare a parenting plan, which will maximize the time each parent spends with the children* during that parent's non-working hours. As closely as possible the parties will alternate weekends and holidays and shall each have available to them one uninterrupted two-week period of parenting time in the summer;
4. Parties shall allow phone contact with the non-custodial parent;
5. Parties will communicate with each other regarding the health, education and schedule of the children;
6. The non-custodial parent shall be the first option for a baby-sitter should the need arise. Only if the non-custodial parent is unavailable should a baby-sitter be consulted.

(emphasis added).

The parties and their counsel at that time also agreed that the children would live with Father and that counsel for Father would prepare a parenting plan and Form 14 reflecting this agreement. Counsel would also draft a proposed judgment that would incorporate the stipulation, parenting plan and Form 14 and fill in remaining factual details about the circumstances of the parties that formed the basis for the modification. In accordance with this agreement, counsel prepared a proposed judgment stating:

4. [T]here has been a substantial and continuing change of circumstances which include, but are not limited to the following:

a. That the minor children have lived continuously with [Father] since the date of the dissolution of marriage;

b. [Mother] no longer resides with [Father], and the parties and children desire to change the provisions of the custody plan; and

c. The circumstances of the parties and the unemancipated minor child have changed to make the present order for custody and support unreasonable.

The proposed judgment did not itself make Father's home the children's residence for mailing and educational purposes, but incorporated the parenting plan and stated that the parties agreed to joint legal and physical custody, that neither was to pay child support, and that each would pay their own attorneys' fees. That plan, as agreed, provided that the children's address for mailing and educational purposes would be Father's home.

Counsel for Mother and Father, and the GAL, all submitted the proposed judgment to the court, along with the stipulation, Form 14 and parenting plan. At the end of the proposed judgment all three signed their names beneath the legend, "approved as to form." While the purpose of having counsel and the GAL "approve" a judgment is not self-evident—only a judge can enter a judgment—counsel suggest that requiring such signatures is local practice and indicates that counsel agree that the judgment accurately reflects the matters addressed therein.[4] The court signed the judgment, without change, on July 22, 2003.

---

4. The practice of including the legend "approved as to form" at the end of a proposed judgment with a place for counsel to sign is potentially confusing and should be avoided.

Although counsel had approved the judgment as to form and later testified that it accurately reflected the parties' agreement, Mother later claimed that she first became aware that Father's home would be the primary residence for educational and mailing purposes only when she was sent a copy of the signed judgment in August. She raised no objection to this provision until she found, after she moved to Kansas City in September, that visitation under the plan had become more difficult. In December, she filed a motion to set aside the modification pursuant to Rule 74.06(b), alleging that the court's judgment was void because the court had not held an evidentiary hearing on the motion to modify and asking that primary physical custody be returned to her.

The trial court held an evidentiary hearing on the motion to set aside the modification, at which Mother testified that she had neither seen nor authorized counsel to approve the parenting plan before the court signed the judgment. Her counsel and his paralegal testified by deposition to the contrary, stating that she had approved the contents of the parenting plan and was agreeable to having Father's residence be the children's address for mailing and educational purposes. They stated Mother feared that if such an agreement had not been reached, the court might have given Father sole custody due to Mother's having moved out of the home, the difficulties she gave Father in regard to seeing the children, and other matters. The court overruled the motion to set aside. Mother appeals. After opinion by the Court of Appeals, Southern District, this Court granted transfer. Mo. Const. art V, sec. 10.

## II. STANDARD OF REVIEW

■ "The judgment denying a motion filed pursuant to Rule 74.06(b) is appealable." *Baxi v. United Technologies Auto. Corp.,* 122 S.W.3d 92, 95 (Mo.App. E.D. 2003). "The trial court is vested with broad discretion in determining whether to set aside a judgment under Rule 74.06," *id.,* and "its decision shall not be reversed unless the record clearly and convincingly proves an abuse of that discretion." *In re Marriage of DeWitt,* 946 S.W.2d 258, 261 (Mo.App. W.D.1997). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Hancock v. Shook,* 100 S.W.3d 786, 795 (Mo. banc 2003); *DeWitt,* 946 S.W.2d at 261. "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Hancock,* 100 S.W.3d at 795.

## III. JURISDICTION TO MODIFY CUSTODY UPON FINDING A CHANGE IN CIRCUMSTANCES FOLLOWING NOTICE AND STIPULATIONS AS TO FACTS SUPPORTING MODIFICATION

Mother argues that section 452.410 requires a court to hold an evidentiary hearing before it may modify custody and that the absence of such a hearing left the court without jurisdiction to modify custody. Because Mother is using the word "jurisdiction" in a broader sense than is usual, it is helpful to explain the types of jurisdictional defects that may render a court without power to hear a case or render a judgment.

*A. Nature of Court's Jurisdiction and Authority.*

■ The essential bases of a court's authority to adjudicate a controversy are its jurisdiction over the subject matter of the

588

controversy and jurisdiction over the parties. This Court has also recognized that in certain narrow circumstances a party may question the authority, or jurisdictional competence, of a court to "render the particular judgment in the particular case." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 21 (Mo. banc 2003).

In *State ex rel. Lambert v. Flynn*, 348 Mo. 525, 154 S.W.2d 52, 57 (banc 1941), this Court noted that subject matter jurisdiction and jurisdiction over the person "are grand subdivisions of jurisdiction." "Subject matter jurisdiction is a tribunal's statutory authority to hear a particular kind of claim." *Sexton v. Jenkins & Assocs.*, 152 S.W.3d 270, 273 (Mo. banc 2004). "The court must have cognizance of the class of cases to which the one to be adjudged belongs." *Kristanik v. Chevrolet Motor Co.*, 335 Mo. 60, 70 S.W.2d 890, 894 (banc 1934). Subject matter jurisdiction is "derived from the law and cannot be conferred by consent," *Flynn*, 154 S.W.2d at 57, while personal jurisdiction "may be waived because it is a personal privilege." *Id.*

Mother does not contest that the court below had subject matter jurisdiction to decide a motion to modify and concedes that it had personal jurisdiction over the parties. But, she asserts, it did not have what she says is also a jurisdictional prerequisite, that is, jurisdiction to "render the particular judgment in the particular case." *Mo. Soybean*, 102 S.W.3d at 21. *Flynn* states that the latter, which it sometimes called "jurisdictional competency" to enter judgment on a particular issue in a particular case, "partakes of the character of one or the other of the first two," 154 S.W.2d at 57. By this *Flynn* meant that it normally becomes an issue when there is no question as to the court's authority to decide the general issue before it, but there is a question whether the issue or parties affected by the court's judgment are properly before it for resolution at that time.

In *Flynn*, for example, the issue was whether a court had authority to decide a case in which the relevant statutes required the plaintiff to first seek various administrative remedies that had not been utilized. The Court explained:

It is said ... 'If the court cannot try the question except under particular conditions or when approached in a particular way, the law withholds jurisdiction unless such conditions exist or unless the court is approached in the manner provided, and consent will not avail to change the provisions of the law in this regard.'

154 S.W.2d at 57 (citation omitted). *Flynn* then concluded that in the case before it:

[R]espondent's court had no power to try the case *until* statutory conditions had been complied with and administrative remedies had been exhausted, and also unless these facts were shown by the petition upon which respondent's jurisdiction was invoked. It partook of jurisdiction of the subject matter and could not be waived by mere appearance of the relators.

*Id.* (emphasis in original). *Accord, Bullmaster v. Krueger*, 151 S.W.3d 380, 385 n. 4 (Mo.App. W.D.2004) (where statute required claimant to serve notice of intent to file mechanic's lien prior to filing lien affidavit, issue was one of competency jurisdiction because concerning satisfaction of statutory prerequisites to suit).

Another situation in which questions about a court's authority to issue a particular judgment in a particular case may arise is where the court has proceeded "beyond the allegations of the pleadings and the prayer for relief." *Charles v. White*, 214

Mo. 187, 112 S.W. 545, 549 (1908). In such cases, *Charles* held, "to that extent, at least, its judgment is void and it is open to collateral attack," *id.,* further stating:

'Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over these particular interests which they choose to draw in question that a power of judicial decision arises. If, in an ordinary foreclosure case, a man and his wife being parties, the Court of Chancery should decree a divorce between them, it would require no argument to convince every one that such decree, so far as it attempted to affect the matrimonial relation, was void.... In such a case the court would have acted within the field of its authority, and the proper parties would have been present; the single but fatal flaw having been the absence from the record of any issue on the point determined.'

112 S.W. at 549, *quoting, Munday v. Vail,* 34 N.J.L. 418, 422–23 (N.J.1871).

In the context of custody actions, courts similarly have found a court lacks authority to modify a decree without first providing notice and an opportunity for hearing. For instance, this Court has held void a decision transferring custody from mother where she had not first received notice and an opportunity to be heard, stating:

The mother was not notified that such motion was filed or would be heard. Her rights were fixed by the previous decree, and such decree could not be modified or changed without notice to her.... Without the presence of the mother, and without notice to her, the court entered a new decree. Such action violated due process of law, as guaranteed by the fundamental law. Citation of authority upon a question so plain will add nothing. The rights of a party cannot be disturbed without notice

and a legal hearing. The judgment under which the father claims these children is void.

*Jack v. Jack,* 295 Mo. 128, 243 S.W. 314, 315 (Mo. banc 1922).

*B. Authority to Modify Custody Based on Stipulations of Fact.*

■ Mother argues that the principles just discussed apply here and deprive the trial court of jurisdiction to modify custody. She argues section 452.410 required the court to hold a hearing before it modified custody and it erred in failing to do so, instead relying on the stipulation signed by the parties. Section 452.410 states in relevant part:

1. Except as provided in subsection 2 of this section, the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child....

Sec. 452.410.1. Mother acknowledges that section 452.410 does not expressly require an evidentiary hearing in order to modify custody. But, Mother argues, various cases nonetheless have relied on it or its predecessors to hold that child custody modification proceedings require a hearing because the guiding principle in such proceedings is the best interest of the children and that cannot be determined by stipulation.

■ Cases such as those cited by Mother are correct to the extent they state that, absent notice and an opportunity for hearing, a court has no authority under the

statute to modify custody.[5] Whether or not such a defect is labeled as "jurisdictional," it is clear that in such a case the court does not have authority "to render the particular judgment in the particular case." But that is not dispositive here, for, as discussed below, the evidence presented permitted the court to find that both parents had notice of the modification hearing, that they conferred with counsel and agreed to the change of custody, that they filed both a document labeled "stipulation" and additional stipulated facts in a proposed judgment that they prepared and in a parenting plan, and Mother neither sought nor was denied the opportunity to present additional facts. Thus, notice and an opportunity for hearing were provided and the court had authority to modify custody.

Mother suggests that a court may nonetheless retroactively be deprived of jurisdiction, and any judgment entered by it thereby rendered void, if in entering the judgment the court failed to follow all procedures set out in the relevant statutes, such as by failing to make findings of fact or to hold a hearing the statutes require. But, such errors would not deprive the court of subject matter or personal jurisdiction, nor would they affect the power of the court to render a particular judgment in the particular case.

The tendency to call matters "jurisdictional" that are really only assertions of legal error greatly confuses the notion of jurisdiction in civil cases. It can also create the potential for great mischief because calling legal errors "jurisdictional" could be used years later to void settled judgments.

The label "jurisdictional defect" is seldom appropriate outside the context of lack of jurisdiction of the subject matter or of the person. While it is not erroneous to use it in the narrow circumstances noted above in which a court by statute is without authority to hear a matter or to issue a judgment on a matter it purports to resolve, or does so without notice and an opportunity for hearing—areas that are related to, if not subsets of, lack of jurisdiction of the subject matter or the person—the label "jurisdictional defect" has no application to mere legal errors. Having obtained jurisdiction of the subject matter and the parties and having entered a judgment on the particular claims raised by the pleadings, at a time when statutory prerequisites to filing suit had been fulfilled, a court has jurisdiction to decide the case.

If a court then errs in substance or procedure in failing to make necessary findings, in making findings not supported by the evidence, in excluding necessary evidence or in mistaking hearing requirements, it has not lost jurisdiction. It simply has erred. Such errors should be raised on appeal and, if prejudicial, may lead to reversal and remand. But, they do not affect the court's jurisdiction to render the particular judgment in the particular case, and "[a] judgment is not void simply because it is erroneous, or based on precedent later determined to be incorrect or unconstitutional." *Baxi*, 122 S.W.3d at 96. To the extent that prior cases have misinterpreted *Flynn*, *Charles*, and their progeny, to say to the contrary, they are incor-

---

5. *See, e.g., Jack*, 243 S.W. at 315 (no jurisdiction to modify based on motion filed by third person as amicus without notice to and service on parties); *State ex rel. Perrella v. McGuire*, 757 S.W.2d 223, 225 (Mo.App. S.D. 1988) (proper petition for modification and notice are jurisdictional prerequisites to modification); *Fernbaugh v. Clark*, 236 Mo.App. 1200, 163 S.W.2d 999, 1003 (1942) (notice required before decree can be modified).

rect and should no longer be followed.[6]

Of course, as Mother notes, section 452.410 does require the trial court to base its decision on facts that have arisen or been made known to it since its last decree. But, the statute does not state *how* these facts are to be made known, and nothing in it supports the assertion that the requirement that facts be found means that stipulations have no place in modification proceedings or that an evidentiary hearing invariably is required.

In non-custody cases, facts may be adduced in a variety of ways, including the use of live testimony, the presentation of documentary evidence in support of a motion or at an evidentiary hearing, or by stipulation of the parties. "A stipulation of fact dispenses with proof of the matters stipulated." *In re An Omega Brand*, 676 S.W.2d 292, 294 (Mo.App. E.D.1984). Further, "parties to such stipulation, should not be heard to object to the proceedings or to the findings of facts by the trial court, if such findings are supported by substantial evidence." *General Motors Acceptance Corp. v. VanAusdall*, 241 Mo.App. 499, 249 S.W.2d 1003, 1006 (1952). Nothing in section 452.410 or other statutes suggests that different evidentiary rules apply in modification proceedings.

This does not mean that the parties can simply submit a document that states that the parties stipulate that there has been a change of circumstances and that a modification of custody is in the best interests of the children. As numerous cases note, the parties cannot stipulate to the ultimate issues, for Missouri law requires that the *court*, not the parties, determine what custody arrangement is in the best interests of the children. If the court merely accepted the parents' stipulation as to best interests or a change of custody, its order would not be supported by substantial evidence and would be subject to reversal.[7] And, a party has a right not to submit its case based on a stipulation but instead to request a hearing. But, nothing in the statute precludes a stipulation as to *facts*, and numerous local court rules permit modification pursuant to such stipulations.[8]

Applying these principles here, if the stipulated facts were insufficient or raised issues of credibility or best interests, then further evidence should have been taken before entering judgment. Normally, such a hearing would be the preferred course so that the stipulated facts could be explored and supplemented; such a hearing would, moreover, have avoided the kind of later questions that

---

**6.** *See, e.g., Fleming v. Fleming*, 562 S.W.2d 168, 170 (Mo.App.1978) (no jurisdiction to modify custody without holding hearing); *In re Lipschitz*, 466 S.W.2d 183, 185 (Mo.App. 1971) ("an order purporting to rule on a motion to modify without a hearing at which evidence is adduced would be in excess of the court's jurisdiction").

**7.** *See, e.g.*, secs. 452.410, .325.2, .375.6, .395.1; *Williams v. Cole*, 590 S.W.2d 908, 911 (Mo. banc 1979) (agreement as to "custody, support, and visitation of minor children *is* not binding on the trial court, nor can the parties preclude or limit the court with respect to the modification of the support, cus-

tody, or visitation provisions of the decree"); *Blackburn v. Mackey*, 131 S.W.3d 392, 399 (Mo.App. W.D.2004) ("court in a dissolution or modification *case is* not bound by the terms of an agreement between the parties with regard to custody, support, or visitation of children"); *M.F.M. v. J.O.M.*, 889 S.W.2d 944, 956 (Mo.App. W.D.1995) (parties' admissions of substantial and continuing change of circumstances do not bind court or require it to modify judgment).

**8.** *See, e.g.*, Thirteenth Judicial Circuit, Rule 68.10; Twenty–Ninth Judicial Circuit, Rule 68.11; Thirty–Second Judicial Circuit, Rule 68.08.

have arisen here as to whether the modification was based on sufficient notice and evidence. But, to the extent that some of the cases cited by Mother suggest that a hearing is *required* by section 452.410 even where the court finds that the stipulated facts are sufficient to allow it to determine that a change of circumstances has occurred and that a modification of custody is in the best interests of the children, they are incorrect and should no longer be followed.[9]

### C. The Court Did Not Abuse Its Discretion in Denying the Motion to Set Aside the Modification Judgment Here.

■ The trial court did not abuse its discretion here, for sufficient facts were established, despite the lack of a hearing, to support its determination that a change in circumstances had occurred sufficient to justify a modification of custody, and the court clearly believed these facts sufficient to support the change in custody it ordered.

The only aspect of the parenting plan or judgment Mother claims was unsupported was the statement that the parties agreed that the children's residence for mailing and educational purposes would be that of Father. But, it was only after the judgment was final and signed and Mother moved from Marshfield to Kansas City, and so had less contact with her children under the modified custody arrangement, that she first raised an objection to it. She claimed that her attorney had not told her that the proposed parenting plan made Father's address the one used for mailing

and school purposes until after the court entered judgment. Only then did she argue that the parenting plan should not be considered and that the stipulation alone was insufficient to support the judgment. While the court could have accepted Mother's version of the facts, it was not required to do so.

Mother's trial counsel testified to the contrary in his deposition. He said that Mother agreed to the residency arrangement after he and Mother extensively discussed her chances if the case went to trial. Their discussions included his concern that Father might be given physical custody of the children in place of Mother, as the GAL apparently was going to recommend, due in large part to Mother's work schedule and certain negative personal facts. According to counsel, Mother understood and agreed to the changes in the parenting plan and did not want an evidentiary hearing. He testified that his paralegal attempted to contact Mother to go over the final version of the parenting plan, but she did not respond.

Counsel's paralegal confirmed that she tried to contact Mother by telephone and by sending a copy to her address, but the mailed copy was neither signed nor returned, nor did she or counsel hear from Mother at all. Counsel testified that, at the time the proposed judgment was submitted, Mother had orally agreed to joint custody and making Father's residence the one utilized for mailing and educational purposes as set out in the finalized parenting plan, stipulation and Form 14. Therefore, he went ahead and signed the pro-

9. *See, e.g., Riley v. Riley,* 643 S.W.2d 298, 300 (Mo.App. W.D.1982) (court "must conduct a hearing and can only act upon presentation of facts from which it may be determined that a change in custody would be in the best interests of the children"); *Fleming,* 562 S.W.2d at 171 (requiring hearing); *Flickinger v.* *Flickinger,* 494 S.W.2d 388 (Mo.App.1973) (properly rejecting modification decision based entirely on juvenile officer's report but erroneously also requiring a hearing before modifying child custody in order to maintain jurisdiction).

posed judgment below the space indicating "approved as to form."

■ The trial court was free to accept the version of events testified to by counsel and his paralegal rather than that of Mother. Moreover, even if counsel had acted beyond the authority Mother gave him, "[g]enerally, actions of a party's attorney, including procedural neglect that precludes a client's substantive rights, are imputed to the client," *Cotleur v. Danziger*, 870 S.W.2d 234, 238 (Mo. banc 1994), and "[a] party who contends that an attorney lacked authority to bind him in a particular way bears a heavy burden." *Jacobs v. Georgiou*, 922 S.W.2d 765, 770 (Mo.App. E.D.1996). The trial court did not abuse its discretion in not finding this burden met here. Mother was not entitled to change her mind after the conclusion of the case and retroactively request a hearing. Mother is, of course, entitled to file a new motion to modify if facts have arisen since the modification at issue that show that a change of circumstances has occurred and a modification is necessary to protect the best interests of the children.

## IV. CONCLUSION

The court did not abuse its discretion in overruling Mother's motion to set aside the modification. Its judgment is affirmed.

All concur.