**STATE of Missouri, ex rel. Phillipia MOORE, et al., Respondents,**

v.

**Robert HAWKINS, Appellant.**

**No. WD 65616.**

Missouri Court of Appeals,
Western District.

June 13, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2006.

As Modified Aug. 1, 2006.

Application for Transfer Denied
Sept. 26, 2006.

Michael C. Shelton–Sinkhorn, Overland Park, KS, for Appellant.

Phillipia Moore, Kansas City, MO, pro se.

Robert D. Noland, Kansas City, MO, for Respondent, State of MO.

Sandra J. Wirtel, Kansas City, MO, for Respondent, Tauheen Hawkins.

Before THOMAS H. NEWTON, P.J., PATRICIA A. BRECKENRIDGE, and PAUL M. SPINDEN, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Robert Hawkins brings this appeal from a circuit court's refusal to declare that a 1992 court order is not a final judgment of paternity. We affirm.

When Ms. Phillipia Moore sought state aid for herself and her five-year-old son in 1991, she identified Mr. Hawkins as the child's father. Ms. Moore and Mr. Hawkins were living together at the time without the benefit of matrimony, so the State of Missouri, Division of Child Support Enforcement (Division), filed a petition for paternity in Jackson County Circuit Court. While there was some difficulty with service, in May 1992 Mr. Hawkins was served with an alias summons and the petition, which alleged that he was the child's natural father and sought to have the parent and child relationship declared to exist between him and the child. He did not file a response. The petition was called for a hearing on July 30, 1992, without notice to either Mr. Hawkins or Ms. Moore, and the circuit court, finding Mr. Hawkins to be in default, ruled that he was the natural father of Ms. Moore's son. The court's ruling is set forth in a document that is denominated an "Order." The order con-

stitutes a final determination of the only issue raised by the paternity petition, i.e., whether Mr. Hawkins was the child's father.[1]

Thereafter, in October 1992, Mr. Hawkins filed a statement of non-paternity with the Division. He continued to live with Ms. Moore and the child in his home for the next seven years and took no other action with respect to the 1992 paternity order. The child, who is autistic, was encouraged to and did refer to Mr. Hawkins as "Daddy." Mr. Hawkins's relationship with Ms. Moore ended in 1999, and in 2000 the Division obtained a support order against Mr. Hawkins of $474 monthly. His income was garnished, and he began changing jobs to avoid the income withholding order. Mr. Hawkins testified that he hired an attorney to contest the child support order, but any pleadings that may have been filed were for some unknown reason unsuccessful.[2] In January 2000, Mr. Hawkins took the child for DNA testing and learned that he was excluded as the father.

In November 2003, Mr. Hawkins filed a petition for declaratory judgment, seeking to set aside the 1992 order. He asked the court to declare that the order was interlocutory because it had not been denominated a "judgment" as required under Rule 74.01;[3] did not adjudicate the rights and liabilities of all the parties;[4] and, as an interlocutory order, could be modified at any time. In March 2004 Mr. Hawkins filed a motion for leave to file an answer to the paternity petition. The court realigned the parties and deferred ruling on this motion and on Ms. Moore's motion to dismiss. Following a hearing at which the parties essentially stipulated that Mr. Hawkins was not the child's natural father, the court ruled that the 1992 order was not interlocutory but was rather a final and appealable judgment. The court also concluded that Mr. Hawkins had waived any opportunity to contest the original paternity finding because he defaulted in both the original and administrative proceedings and waited nearly four years after being excluded as the biological father to file the action for declaratory judgment.

While Mr. Hawkins had attempted to show during the hearing that Ms. Moore lied to him about his paternity, the court further stated that it would not address any potential fraud issues under Rule 74.06(b) because they had not been raised in Mr. Hawkins's petition. Mr. Hawkins filed motions for relief from judgment and for new trial, arguing that it was no longer equitable that the 1992 judgment remain in force and that he should be relieved as a party from the judgment due to Ms. Moore's fraud and misrepresentations. He also claimed that the circuit court's 2005 judgment was inconsistent for acknowledging non-paternity while refusing to disturb the 1992 paternity order. The circuit court denied his motions, and he now appeals.

■■■ Mr. Hawkins challenges the 1992 order as void for "jurisdictional defect"

---

1. The document orders, adjudges and decrees that (i) Mr. Hawkins is the natural father of the child, (ii) the Bureau of Vital Records shall prepare a new birth certificate listing him as the father, and (iii) the costs, including the costs of paternity blood testing, be paid by the respondents.

2. There is no documentary evidence in the record relating to this purported legal action.

3. Rule citations are to the Missouri Rules of Civil Procedure.

4. Ms. Moore had been joined as a respondent because she failed to cooperate with the Division. She also did not file a response to the paternity petition or appear at the 1992 hearing.

and as lacking finality both because it was not denominated a "judgment" and the parties did not accept the benefits or burdens of the order. He further claims that (i) the circuit court's 2005 judgment is internally inconsistent and cannot stand, and (ii) the paternity case must be dismissed because there is conclusive DNA evidence that he is not the child's natural father. We apply the same standard of review in a declaratory judgment case as in any other bench-tried matter. *R.W. v. Sanders*, 168 S.W.3d 65, 68 (Mo. banc 2005). We affirm the court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

▆ Mr. Hawkins's first point on appeal raises an issue that has recently been laid to rest by the Missouri Supreme Court.[5] He contends that the court that issued the paternity order lacked jurisdiction because, without the participation of the parties and the child's next friend during the July 1992 hearing, there was no evidence on which a determination of paternity or the child's best interests could be made. A similar issue was raised and rejected in *In re Marriage of Hendrix*, 183 S.W.3d 582 (Mo. banc 2006). In that case, a mother challenged a child custody modification ruling by claiming that an evidentiary hearing was a jurisdictional prerequisite and that the court's reliance on stipulated facts to make its determination was a jurisdictional defect that rendered the judgment void. *Id.* at 587. Noting that "the label 'jurisdictional defect' has no application to mere legal errors," the court distinguished those cases where subject matter or personal jurisdiction is at stake[6] from those cases that simply involve assertions of legal error, such as failing to make necessary findings or making findings not supported by the evidence. *Id.* at 590. The court was concerned that mislabeling a mere legal error as jurisdictional defect creates "the potential for great mischief because calling legal errors 'jurisdictional' could be used years later to void settled judgments." *Id.*

We believe that Mr. Hawkins is asserting legal error, i.e., insufficient evidence, in the guise of "jurisdictional defect."[7] The Uniform Parentage Act, §§ 210.817—.852, RSMo Cum.Supp.1989, does not require a hearing in an action to establish paternity. In fact, the law provides "[i]f any party fails to file his answer or otherwise appear in response to an action commenced under sections 210.817 to 210.852 within the time prescribed by law or rules of practice of the court, the court may enter judgment against him by default." § 210.839.5,

5. We could deny this point because it has been raised for the first time on appeal. Rule 84.13(a). Because it purports to raise a question of jurisdiction, however, we will address it. *Id.*

6. The court also labeled as jurisdictional error those cases where a court addresses and decides issues not raised by the pleadings. *In re Marriage of Hendrix*, 183 S.W.3d 582, 588–89 (Mo. banc 2006).

7. Mr. Hawkins attempts to distinguish his "jurisdictional defect" claim from a sufficiency claim, arguing that there must be some evidence of the child's best interest in a paternity case and that a court acts in excess of its jurisdiction in the absence of any such evidence. While there is case law which indicates that the policy underlying the Uniform Parentage Act is a child's best interests, there is nothing in the Act that requires a best interests analysis. *See Harmon v. Headley*, 95 S.W.3d 154, 159 (Mo.App. W.D.2003) (recognizing policy and ruling that person who failed to file counterclaim when child's paternity was being determined in earlier litigation should not be allowed to bring later suit to establish that he was child's natural father as this would not be in the child's best interests).

RSMo Cum.Supp.1989.[8] Here, Mr. Hawkins was served with the petition and the alias summons, which notified him of the action and his obligation to respond within thirty days or suffer a default judgment; thus, in the absence of a challenge to personal jurisdiction, the court obtained personal jurisdiction over him. Circuit courts have jurisdiction to decide actions brought under the Uniform Parentage Act, § 210.829.1, RSMo Cum.Supp.1989; thus, because this was an action brought under the Act, the court had subject matter jurisdiction.[9] Mr. Hawkins's failure to respond to the petition did not oust the court of jurisdiction, and, in fact, justified the default judgment entered against him. Even if the circuit court's judgment was erroneous, an erroneous judgment can only be attacked through a direct appeal. *J.L.M. v. R.L.C., Jr.*, 132 S.W.3d 279, 284 (Mo. App. W.D.2004).[10] This point is denied.

■ Mr. Hawkins's claim that the 1992 order was not final because it was not denominated a "judgment," also fails because, when the order was rendered, Rule 74.01 did not impose this requirement. In 1992, Rule 74.01(a) provided, " 'Judgment as used in these Rules includes a decree and any order from which an appeal lies.' " A "judgment" has, since at least 1909, been defined in Missouri as "the final de-

termination of the right of the parties in an action." *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997) (citing section 511.020, RSMo 1994).[11] The supreme court amended Rule 74.01(a) in 1995 to clarify what constitutes a "judgment" but did not change the relevant substantive law. *Id.* In this regard, the court states:

> Under old Rule 74.01(a), it was unclear when a pronouncement or judgment was a final judgment for purposes of appeal. The new rule clarifies that ambiguity by imposing an express requirement that the document or docket notation be "denominated 'judgment'." Rule 74.01(a) does not expand or shrink jurisdiction, the right to appeal, or any other substantive right. It merely clarifies what constitutes a "judgment."

*Hughes*, 950 S.W.2d at 853.

Thus, before 1995, in assessing whether a particular court decree or order was a judgment, the courts did not look for the presence or absence of the word "judgment" on the document or docket entry. Rather, the courts would assess whether the circuit court's ruling disposed of all the parties and issues in a case. *See, e.g., Stith v. St. Louis Pub. Serv. Co.*, 363 Mo. 442, 251 S.W.2d 693, 695 (1952); *State ex*

8. The statute has since been revised to *require* the court to enter a default judgment in this circumstance. § 210.839.5 RSMo 2000.

9. Mr. Hawkins argues that there is "no statutory scheme in Missouri for establishing a relationship between a child and *non*-biological parent, unless that parent is an 'adoptive' parent." Because he is not the biological or adoptive parent, he contends that the circuit court exceeded its jurisdiction in rendering an order on this issue. Section 210.826.3, however, clearly provides, "An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 210.822 [addressing when a man is presumed to be a

child's natural father] may be brought by ... the division of child support enforcement[.]" § 210.826.3, RSMo Cum.Supp.1989.

10. Mr. Hawkins complains that there could have been no evidence establishing his paternity during a hearing at which only the Division chose to participate. The law permits the court to consider all evidence relevant to the issue of paternity, § 210.836(5) RSMo Cum.Supp.1989, including, as here, an uncontested form filled out by the child's mother identifying an individual as the child's father.

11. The same definition is set forth in prior revisions of section 511.020. 1939 § 1236; 1929 § 1070; 1919 § 1521; 1909 § 2090.

*rel. Div. of Family Servs. v. Grills,* 799
S.W.2d 209, 210 (Mo.App. S.D.1990). *But
see Div. of Child Support Enforcement v.
Shelton,* 25 S.W.3d 165, 166–67 (Mo.App.
W.D.2000) (stating, in dicta, that 1992 or-
ders were "not proper judgments" because
they were apparently not denominated
"judgment" or "decree.").

The petition for paternity sought a court
order under the Uniform Parentage Act
declaring Mr. Hawkins to be the father of
Ms. Moore's child. The petition alleged
that he was the child's natural father. Mr.
Hawkins chose not to respond to the peti-
tion, and was, therefore, in default. The
1992 paternity order found Mr. Hawkins,
"upon consideration of the pleadings and
the evidence submitted," to be the child's
natural father and ordered the issuance of
a new birth certificate. The ruling left
nothing else for consideration and disposed
of all the issues raised by the petition; as
such, it was "a decree [or] any order from
which an appeal lies." Mo. R. Civ. P.
74.01(a) (1992) (amended 1995). Hence, it
was a judgment under Rule 74.01, and the
circuit court did not err in so ruling.[12]
This point is denied.

■ Mr. Hawkins further claims that
the court's 2005 judgment denying his re-
quest for declaratory relief cannot stand
because it is based on findings of fact that
are inconsistent with the court's conclu-
sions of law. In this regard, he argues
that the circuit court cannot find that Mr.
Hawkins is not the child's father and then

conclude that he is. What the court found
was that eight years after he was deter-
mined, in default, to be the child's father,
Mr. Hawkins underwent testing and was
excluded as the biological father. Nearly
eleven years after entry of the paternity
order, which was not appealed, Mr. Haw-
kins finally decided to do something about
it. The court then concluded that the 1992
"Order" was not interlocutory, that Mr.
Hawkins had waived his opportunity to
contest the original paternity finding, and
that it would not be in the child's best
interests to disturb the 1992 order. We
find no inconsistency between the court's
findings and conclusions. This point is
denied.

■ Finally, Mr. Hawkins claims that
the 1992 paternity case should be dis-
missed because conclusive DNA evidence
has excluded him as the child's father, and
it is impossible to establish a relationship
between the child and a person who is not
the child's "natural" father. He did not
request such relief in his petition for de-
claratory judgment, and because we have
ruled that the 1992 order was not interloc-
utory, we have no basis for entering such
an order. It may seem unfair to impose a
child-support obligation on a person who is
not biologically related to the child, but
there are other principles at stake that
must be honored, including the finality of
judgments, the orderly disposition of legal
disputes, and the best interests of a child
who only knew one man as a father until

12. Even if we were to find that the 1992 order
was not a final judgment, a party can accept
and ratify a "judgment" by accepting its bene-
fits or burdens, i.e., by conducting him or
herself as if the "judgment" were valid.
*State, Dep't of Soc. Servs. v. Houston,* 989
S.W.2d 950, 952 (Mo. banc 1999). Mr. Haw-
kins continued to live with Ms. Moore and her
son for seven years after entry of the order.
He considered himself to have a father and
son relationship with the boy and provided a

home for him. The boy called him and no
other man "Daddy." Then, when the State
garnished his wages, Mr. Hawkins started
changing jobs to avoid his legal obligation,
and did not file his declaratory judgment ac-
tion for nearly four years. It appears to this
court that Mr. Hawkins accepted both the
order's benefits and burdens and is estopped
from challenging the order on the basis that it
is void.

he was unceremoniously abandoned by the man at fourteen.

For these reasons, we affirm.

PATRICIA A. BRECKENRIDGE, and PAUL M. SPINDEN, JJ., concur.