ROY L. RICHTER, Judge
Staci Hurst ("Mother") appeals from the trial court's judgment of dissolution ordering Thomas Hurst ("Father") to pay Mother child support of $341 per month for the parties' three children. We reverse and remand.
I. Background
Mother and Father were married on October 5, 1996. Three children were born of the marriage: their oldest daughter, born May 14, 1998; their son, born June 22, 1999; and their youngest daughter, born June 8, 2003. On September 18, 2015, Father filed a petition for dissolution of the marriage. On September 28, 2015, Mother filed an answer and counter-petition. On July 21, 2016, Mother filed an amended counter-petition to add Father's father, Franklin Hurst ("Franklin"), as a third party respondent.
The two day trial began on November 17, 2016. Because the parties did not have an agreed upon parenting plan or any agreement concerning the distribution of marital property and debts, the trial court addressed child custody, child support, and the valuation of the parties' marital and nonmarital property.
A. Child Custody
The parties agreed that joint legal custody was appropriate. However, the parties disagreed on physical custody. Father proposed alternating weeks of physical custody for all three children. Mother proposed that Father have sole physical custody of their son, with Mother having visitation, and Mother having sole physical custody of their younger daughter, with Father having visitation. Mother further proposed that neither party have physical custody or visitation of their older daughter who had graduated from high school and was in college.
B. Child Support
The week before the trial, Mother's counsel emailed Father's counsel regarding a stipulation of Father's gross income. Mother's counsel expressly stated that her plan was "to stipulate to [Father's] gross income of $17,742" so that she could cancel a scheduled deposition with a tax expert for purposes of reviewing Father's tax returns and determining Father's income based upon Civil Procedure Form 14 (" Form 14") standards. Father's counsel replied, "So, are you letting [the tax expert] know or are you relying upon me [to cancel the deposition]?" Mother's counsel responded, "Cancel it. We'll stipulate to [Father's] income per his amended statement."
At trial, Father presented evidence of the parties' 2013, 2014, and 2015 joint income tax returns containing his income related to his employment with the State of Missouri, auctioneer business, accounting business, and cattle business. Father further offered his Form 14 calculation claiming a monthly gross income of $10,958, which was accompanied with a sheet demonstrating his calculation to the court.
*856 During Mother's testimony addressing Father's income for purposes of child support, Mother testified that the parties stipulated that Father's monthly gross income was $17,742. Noting a discrepancy in this alleged stipulation and Father's monthly income represented in his previously admitted evidence, the trial court asked, "is there a stipulation that [Father's] monthly income is $17,742?" Father's counsel replied, "That's what's on the income and expense statement, but my analysis was going through some expenses ... because that asks for your gross monthly income. There was an agreement that's the gross monthly income." Mother's counsel again asked whether Father's monthly gross income was stipulated to be the $17,742 reported on Father' income and expense statement. Father's counsel clarified that the $17,742 only represented Father's gross income without respect to business expenses that had yet to be subtracted.
C. Division of Marital Property
The parties' marital home, including a lake and barn, was built on a parcel of land owned by Franklin. There was conflicting expert testimony regarding the marital home's value: Father's expert appraised the home at $396,000 assuming 12 acres would be sold, and Mother's expert appraised the home at $510,000 assuming 15 acres would be sold. Both experts testified that if the parties did not own the land in fee simple, the property value would be negatively impacted. Father's expert specifically testified that if the parties did not own the property in fee simple, it was possible that the marital home would have zero market value. Franklin owned approximately 460 acres on which the marital home was built, but affirmed at trial that he thought the 460 acres would go to Father after his death-including the parcel of land on which the marital home was built. Father testified that when he discussed building a new house on the land, Franklin told him to "do whatever you want."
Regarding the value of household goods, Mother's valuation of her household possessions was $10,000, and Father valued her household possessions at $20,000. In support of Father's valuation of household goods in Mother's possession, Father testified that Mother had removed patio furniture, refrigerator, stove, dishwasher, and cabinets prior to moving out of the marital home. Photographs of Mother's current home were also considered in determining the value of Mother's household goods.
D. Judgment
The trial court entered judgment dissolving the parties' marriage and found that joint legal and physical custody with a split custody arrangement was in the best interests of the children. Rejecting both parties' Form 14 calculations, the court ordered Father to pay Mother $341 in presumptive child support[1] based on a finding that Father's monthly income was $6,674. The court valued the parties' marital home at $300,000 and awarded the property to Father. The court valued the household goods in Mother's possession at $20,000. Mother filed a motion to amend the judgment or for new trial, which was denied. This appeal follows.
II. Discussion
Mother alleges three points on appeal. First, she argues the trial court erred in calculating the presumptive child support amount because the court's computation of *857 Father's gross monthly income based on Father's Form 14 was against the weight of the evidence in that Father stipulated his gross income was $17,742 rather than $6,674 as found by the court.
Second, Mother claims the trial court erred by valuing the marital home at $300,000 because that valuation was against the weight of the evidence in that both parties' experts appraised the home at more than $300,000, the home was insured for $400,000, and no evidence was presented regarding potential transactional costs in retitling or selling the property.
Third, Mother contends the trial court erred in valuing her household possessions at $20,000 because the valuation was against the weight of the evidence in that Mother valued her possessions at $10,000 and the personal property was the former owner's property and included in the purchase price of the home.
A. Standard of Review
When reviewing the trial court's judgment in a dissolution proceeding, we must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Cureau v. Cureau, 514 S.W.3d 685, 689 (Mo. App. E.D. 2017). We review all evidence and permissible inferences in the light most favorable to the trial court's decision, while disregarding all contrary evidence and inferences. Id.
The trial court has broad discretion when dividing marital property and awarding child support. Coleman v. Coleman, 318 S.W.3d 715, 719 (Mo. App. E.D. 2010). This discretion is abused "only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." Id. at 720. (quoting Manning v. Manning, 292 S.W.3d 459, 462 (Mo. App. E.D. 2009) ).
B. Gross Salary Stipulation (Point I)
Mother contends the trial court erred in using a gross income of $6,672 when determining Father's Form 14 presumptive child support amount because the trial court did not use the parties' stipulated gross income amount of $17,742 when calculating Father's Form 14.
Pursuant to Rule 88.01 and Section 452.340, a trial court's determination of the proper child support amount requires a two-step analysis. Sullins v. Sullins, 417 S.W.3d 878, 881 (Mo. App. E.D. 2014). First, the trial court must calculate the child support amount by either accepting one of the parties' Form 14 calculations or by creating its own Form 14 calculation. Id. Second, the trial court must consider the factors set forth in Section 452.340.1[2] and determine whether the presumed Form 14 child support amount is "unjust or inappropriate." Id. When a party is self-employed, *858 gross income for purposes of Form 14 is calculated as "gross receipts minus the ordinary and necessary expenses incurred to produce such receipts." Plager v. Plager, 426 S.W.3d 689, 697 (Mo. App. E.D. 2014). This Court has noted that gross income as used in a federal income tax calculation is not the same as gross income used in a Form 14 calculation. Kropf v. Jones, 489 S.W.3d 830, 837 (Mo. App. E.D. 2015).
Here, the parties exchanged emails concerning Father's gross income a week before the trial. The parties stipulated that Father's gross income was $17,742, and in response to this stipulation, Father's counsel canceled a deposition of Mother's tax expert. However, at trial, Father presented, without objection, joint income tax returns and a Form 14 asserting a monthly gross income of $10,958. The trial court ultimately rejected both parties' Form 14 calculations, and did not use the stipulated amount of $17,742 when calculating Father's child support obligations.
"A stipulation of fact dispenses with proof of the matters stipulated. Having stipulated to facts, a party waives his right to any subsequent contention to the contrary." In re An Omega Brand, 676 S.W.2d 292, 294 (Mo. App. E.D. 1984). Thus, while Mother did not object to Father's evidence contradicting the parties' stipulation, a failure to object to evidence contrary to a stipulation does not waive the objection or stipulation.
Father argues that the stipulation was merely an agreement on Father's gross income prior to the business expense reductions, which Form 14 instructions state must be deducted when a party is self-employed. This argument is unconvincing when considering the context of the parties' stipulation. Mother's stipulation to Father's gross income and the corresponding cancelation of a deposition with Mother's tax expert by Father's counsel implies that the parties intended the stipulation to apply to Father's Form 14 calculation. The record indicates that, in preparation of the tax expert's deposition, Mother's counsel provided Father's counsel a list of additional documents that the tax expert requested for purposes of analyzing the tax returns, which Father admitted at trial. Thus, if the parties merely intended the stipulated amount to apply only to Father's gross income already reflected in his tax returns, a deposition of the tax expert would not have been cancelled as the expert's testimony would still be necessary for interpreting Father's tax returns and rebutting his alleged business expenses. The parties, however, expressly agreed to a gross income of $17,742 for Father, and Father's counsel cancelled the deposition of Mother's tax expert after Mother's counsel had conveyed the purpose of the tax expert's testimony. This Court sees no other interpretation of the parties' stipulation in context of the parties' correspondence and actions.
The record does not contain substantial evidence to support the trial court's determination that Father's gross monthly income was $6,674. Accordingly, we remand the trial court's judgment with instructions to use the stipulated amount of $17,742 as Father's gross income prior to business expenses in recalculating Father's presumptive Form 14 child support amount. Mother's first point is granted.
C. Marital Home Valuation (Point II)
Mother argues that the trial court erred in valuing the marital home at $300,000 because the valuation, which included costs associated with retitling the property, was speculative and clearly against the weight of the evidence.
*859 The trial court values marital property at the time of trial. Kratzer v. Kratzer, 520 S.W.3d 809, 818 (Mo. App. E.D. 2017). "When the trial court's valuation of property is within the range of conflicting evidence of value offered at trial, the court acts within its discretion to resolve conflicts in evidence." Taylor v. Taylor, 25 S.W.3d 634, 644 (Mo. App. W.D. 2000) (citing Wofford v. Wofford, 991 S.W.2d 194 (Mo. App. W.D. 1999) ). While the trial court is permitted to make its own determination of the fair market value of the marital property, it is prohibited from finding a fair market value that is not supported by the evidence. Nelson v. Nelson, 195 S.W.3d 502, 508 (Mo. App. W.D. 2006).
Here, each party presented expert appraisals of the marital home. Father's expert valued the home at $396,000. Mother's expert valued the home at $510,000. Both parties' experts testified that the marital home's values would be diminished if the property owner did not own the land on which the marital home was built. However, neither provided any specific valuation under this speculative transaction. Father's expert merely noted that a discount from his appraised value was "possible" if the title was cloudy. Mother's expert specifically stated that he "did not make that analysis." This possibility resulting in a $96,000 discount from the lowest value presented in the experts' appraisal range, however, is not consistent with additional evidence in the record.
Franklin testified that he had never charged or collected any rent from Mother and Father for building a home and residing on his land, which he considered to be the parties' land. Moreover, Franklin testified that he intended to convey not only the acreage of land on which the marital home was built, but his entire 460-acres of surrounding land to Father upon his death.
Even assuming, contrary to Franklin's testimony, that Father will not receive the land on which the marital home was built, a sale of the land based on the per-acre value that the parties agreed upon does not suggest a $300,000 valuation for the property. The only per-acre value contained in the record is the parties' agreed value of $1,500 an acre. Thus, as the acreage of marital property was appraised at 12 or 15 acres by Mother and Father respectively, the cost of the land on which the marital home was appraised would range from $18,000 to $22,500. Accordingly, a deviation of $96,000 from the experts' lowest appraisal would fall drastically outside the range supported by the evidence.
Had the marital home been awarded to Mother, the speculative issue of an uncertain title would present a more realistic concern as the home would be surrounded by Franklin's remaining acreage. However, considering Father's award of the marital home and Franklin's testimony regarding Father's future possession of the acreage, the record does not contain sufficient evidence of a significant transaction cost that would result in the value of the marital home diminishing $96,000 below the lowest value presented by the parties' appraisal experts. Thus, the trial court erred in valuing the marital home at $300,000. We remand for a revaluation of the marital home consistent with the evidence presented regarding Father's future title of the land on which the marital home was built. Mother's second point is granted.
D. Personal Property Valuation (Point III)
Mother's third point claims the trial court's valuation of household possessions at $20,000 was clearly against the weight *860 of the evidence because the valuation included photographs of personal property that were already included in the purchase price of the Mother's home, and therefore were not acquired with marital funds. Mother contends that the trial court's consideration of these items assesses the value of photographed items twice, and inflates the total valuation of her household possessions. We disagree.
Pursuant to Section 452.330.1 (RSMo. 2000 ), the trial court must consider "all relevant factors" in dividing marital property, including:
(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
(3) The value of the nonmarital property set apart to each spouse;
(4) The conduct of the parties during the marriage; and
(5) Custodial arrangements for minor children.
Section 452.330.1(1)-(5). The trial court's determination of value must be an informed decision, but the court's valuation is not a "precise mathematical computation." Coleman v. Coleman, 318 S.W.3d 715, 722 (Mo. App. E.D. 2010).
The trial court awarded each party the household goods in their possession at the time of the judgment. In its judgment, the trial court stated the value of Mother's household goods was $20,000 and noted that its valuation considered "the testimony and photographs of [Mother's] current home." In denying Mother's motion to amend the judgment, the trial court further stressed the evidence of Mother's removal of large appliances from the marital home supported its valuation of Mother's household possessions.
Here, although neither party submitted detailed or itemized information regarding the value of the household goods, both testified regarding the total value of personal property in each party's possession at the time of the dissolution. Father testified that the value of household goods in Mother's possession was $20,000 and Mother testified that the value of household goods was $10,000. In support of his higher valuation of the property, Father further testified that Mother had removed a new refrigerator, dishwasher, stove, washer, dryer, patio furniture and cabinets from the marital home.
Considering the testimony presented at trial and the valuations presented by the parties, the trial court's valuation of Mother's household possessions was supported by evidence at trial and was not clearly against the logic of the circumstances. Thus, the trial court did not clearly err in its valuation of Mother's household goods. Mother's third point is denied.
III. Conclusion
The trial court's judgment is reversed and remanded in part with instructions to consider the party's stipulated gross income in the court's calculation of Father's Form 14 and revalue the marital home consistent with the evidence. In all other respects, the trial court's judgment is affirmed.
Lisa P. Page, P.J., concurs
Philip M. Hess, J., concurs

The presumptive support owed by Mother to Father for the parties' son was $541 per month, and the presumptive amount owed by Father to Mother for the parties' two daughters totaled $882, resulting in a net monthly payment of $341 owed by Father.

Relevant factors include:
(1) The financial needs and resources of the child;
(2) The financial resources and needs of the parents;
(3) The standard of living the child would have enjoyed had the marriage not been dissolved;
(4) The physical and emotional condition of the child, and the child's educational needs;
(5) The child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and
(6) The reasonable work-related child care expenses of each parent.
Section 452.340 (RSMo. 2000 ).