**STATE ex rel. STATE of Missouri, Relator,**

v.

**The Honorable Paul PARKINSON, Judge, Macon County, Respondent.**

No. SC 89470.

Supreme Court of Missouri, En Banc.

April 14, 2009.

Chris Koster, Atty. Gen., James R. Layton, Office of Missouri Atty. Gen., Jefferson City, MO, Andrew Dickson, Asst. Atty. Gen., Kansas City, MO, for Relator.

Emmett D. Queener, Office of Public Defender, Columbia, MO, Amy Clay, Office of Public Defender, Clayton, MO, for Respondent.

LAURA DENVIR STITH, Chief Justice.

The Missouri Department of Corrections gave the attorney general notice, prior to the end of confinement of Richard Closser, that Mr. Closser may be a sexually violent predator (SVP). The attorney general, relying on the assessments of the prosecutors' review committee and the multidisciplinary team, determined that Mr. Closser may be an SVP and filed a petition to commit him as an SVP. After a hearing, the trial court held there was probable cause to believe that Mr. Closser may be an SVP, and a later mental evaluation so found also.

After six continuances and substantial discovery Mr. Closser moved to dismiss the petition, asserting that the court lacked jurisdiction because the licensed psychologist who authored an initial end-of-confinement report the department sent to the attorney general some three years earlier had not yet received his Missouri license at the time he filed the report. The trial court agreed that this deficiency deprived it of jurisdiction to proceed and dismissed the petition. The attorney general sought extraordinary relief to prevent release of Mr. Closser, and this Court issued its preliminary writ.

The writ of prohibition is made permanent. The error in allowing the psychologist to issue his report before he received his Missouri license is just that, error. Mere error does not deprive a court of jurisdiction it otherwise possesses. For the reasons set out below, the error was neither prejudicial nor preserved. Accordingly, the writ of prohibition is made absolute and the trial court is directed to vacate its order dismissing the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Richard Closser was convicted of sexual abuse in 1990. In June 1997, he received two new convictions for child molestation and sexual misconduct, for which he received a suspended imposition of sentence and was placed on probation for five years. His probation on the 1997 offenses was revoked in 2001 due to his failure to make adequate progress in required sexual offender treatment, and he proceeded to serve his sentence. He refused to participate in the Missouri Sex Offender Treatment Program [MOSOP] while in prison.

Section 632.483 [1] is part of a statutory scheme to identify, commit and treat sexually violent predators. It sets out the procedure for instituting commitment proceedings against currently incarcerated persons prior to their release and provides that the "agency with jurisdiction" (here the department) shall give written notice to the attorney general and a multidisciplinary team established pursuant to section 632.483.4 that a person in the agency's custody "may meet the criteria of a sexually violent predator . . . ." The statute fur-

---

1. Unless otherwise indicated, all statutory references are to RSMo Supp.2003.

ther provides that with this notice, the department shall provide the attorney general and the multidisciplinary team with:

(1) The person's name, identifying factors, anticipated future residence and offense history;

(2) Documentation of institutional adjustment and any treatment received or refused, including the Missouri sexual offender program; and

(3) A determination by either a psychiatrist or psychologist as defined in section 632.005 as to whether the person meets the definition of a sexually violent predator.

Sec. 632.483.2.

The multidisciplinary team consists of no more than seven persons, including at least one from the department of corrections and the department of mental health. That team is to review available records about the offender to assess whether it believes the person meets the definition of an SVP and to notify the attorney general of its assessment. Sec. 632.483.4.

The statute also requires a five-member prosecutors' review committee, composed of a cross-section of prosecutors from rural and urban counties, to review the referred person's records. The multidisciplinary team's assessment shall be made available to the prosecutors' review committee, which then "shall make a determination of whether or not the person meets the definition of a sexually violent predator." Sec. 632.483.5.

Only if it appears to the attorney general "that the person presently confined may be a sexually violent predator and the prosecutor's review committee ... has determined by a majority vote, that the person meets the definition" of an SVP, may the attorney general then file a petition "alleging that the person is a sexually vio-

lent predator and stating sufficient facts to support such allegation." Sec. 632.486. The statute requires the attorney general to attach to the petition a copy of the multidisciplinary team's assessment. *Id.* Copies of the end-of-confinement report and the prosecutors' review committee assessment are not required to be attached. *Id.*

Under section 632.489, upon the filing of the petition "the judge shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator." If the judge so determines, the person is entitled to notice and a hearing within 72 hours at which he or she can "contest probable cause as to whether the detained person is a sexually violent predator." Sec. 632.489.2.[2] At the hearing, the court shall verify the detainee's identity and determine probable cause. The detained person shall have a right to counsel, to present evidence, to cross-examine witnesses, and to view and copy all petitions and reports in the court file. Sec. 632.489.3.

If—and only if—the court determines, based on the evidence at the hearing, that probable cause exists to believe the person is an SVP shall the court direct that the person be sent to a secure facility for an evaluation by a psychologist or psychiatrist as to whether the person is an SVP. Sec. 632.489.4. The court shall conduct a trial within 60 days of the evaluation, but the trial may be continued at the request of either party and for good cause shown. Sec. 632.492.

In Mr. Closser's case, shortly before he was to be released from prison, the department provided notice to the attorney general and to the multidisciplinary team that it appeared to the department that Mr. Closser was a person who may meet the

**2.** All references to Section 632.489 are to RSMo 2000.

criteria of a sexually violent predator. Mr. Closser does not contest that the department attached to that notice, as required by statute, the information about Mr. Closser's name, identifying factors, anticipated future residence and offense history, and documentation of institutional adjustment and treatment, including MOSOP, pursuant to section 632.483.2(1) and (2). He further concedes that the end-of-confinement report was prepared by a trained psychologist, Dr. Suire, and that it addressed whether he met the definition of an SVP as required by section 632.483.2(3), albeit prepared by a psychologist whose Missouri license had not been issued yet.

The record also shows that the multidisciplinary team that assessed Mr. Closser determined, based on the materials provided it, that Mr. Closser *did not* meet the definition of an SVP and that it provided this assessment to the prosecutors' review committee. The committee unanimously determined that Mr. Closser *did* meet the definition of an SVP. Both assessments were presented to the attorney general, who determined pursuant to section 632.486 that Mr. Closser may be an SVP and filed a petition for his civil commitment. As required, the attorney general attached the determination of the multidisciplinary team. *Id.*

The court made a probable cause finding, ordered Mr. Closser detained, and held a probable cause hearing within 72 hours as required. At that hearing, the state was entitled to rely on the petition and other documentary or live evidence, and Mr. Closser was entitled to be represented by counsel, to present evidence, to cross-examine witnesses, and to view copies of all petitions and reports in the court file. As such, the court had available a copy of Dr. Suire's report. After the hearing, the court determined that probable cause existed to believe that Mr. Closser was an SVP.

The court set this matter for trial six different times between June 2005 and May 2008, with the case being continued the first three times at the request of Mr. Closser's attorney and the final three times on the court's own motion. In May 2008, more than three years after the court's initial probable cause determination, Mr. Closser's counsel for the first time raised the issue that the state failed to follow proper statutory procedure. In particular, he noted that, at the time Dr. Suire prepared his end-of-confinement report in the fall of 2004, he had not yet been granted his Missouri psychologist license, although the record indicates that Dr. Suire did have a Texas psychologist license, and that his Missouri license was granted in March 2005. Counsel alleged that this deprived the trial court of jurisdiction to proceed on the petition later filed by the attorney general. The attorney general countered that if this were a violation of the relevant statute, it was a technical one, not a jurisdictional defect, and was waived and was not prejudicial.

On July 16, 2008, the trial court determined that Dr. Suire was not authorized to prepare the end-of-confinement report and that this error in permitting him to prepare the report the department submitted to the attorney general years earlier deprived it of jurisdiction to proceed to trial for determination of whether Mr. Closser was an SVP.

## II. STANDARD OF REVIEW

 In this case, it is uncontested that the psychologist who prepared the end-of-confinement report was not licensed in Missouri at the time he wrote the report. The key issue before the court is the legal effect of this lack of Missouri licensure. This Court's review of the trial

court's finding of a lack of subject matter jurisdiction is a question of law. "[W]here, as here, the facts are uncontested, a question as to the subject-matter jurisdiction of a court is purely a question of law, which is reviewed de novo." *Missouri Soybean Ass'n v. Missouri Clean Water Com'n*, 102 S.W.3d 10, 22 (Mo. banc 2003) (citations omitted).

## III. THE REQUIREMENTS OF SECTION 632.483 ARE NOT JURISDICTIONAL

Mr. Closser argues the fact that the end-of-confinement report attached to the department notice was written by a psychologist before he obtained his Missouri license constitutes a jurisdictional defect that renders all subsequent proceedings against him void.

 "The essential bases of a court's authority to adjudicate a controversy are its jurisdiction over the subject matter of the controversy and jurisdiction over the parties." [3] *In re Marriage of Hendrix*, 183 S.W.3d 582, 587–88 (Mo. banc 2006). "Subject matter jurisdiction [is a matter of] the court's authority to render a judgment in a particular category of case." *J.C.W. v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). *Hendrix* distinguishes such a jurisdictional defect from mere error. Mrs. Hendrix argued that the trial court's decision to proceed on a stipulated record rather than hold a live evidentiary hearing violated the dissolution statute's requirement of a hearing, and that such a failure to follow statutory requirements deprived the trial court of jurisdiction to continue with the dissolution proceeding. This Court rejected that argument, holding that "the label 'jurisdictional defect' has no application to mere legal errors."

*Hendrix*, 183 S.W.3d at 590. The trial court had jurisdiction over the parties and authority to hear dissolution actions; accordingly, even were the failure to hold a hearing a failure to comply with the statute, it merely would be error, not a jurisdictional defect, and such errors can be waived, as they were in that case. *Id.*

Similarly, in *J.C.W.* this Court held that it would "rob[ ] the concept of subject matter jurisdiction of the clarity that the constitution provides" were any error in following a statute's requirements considered to deprive a court of jurisdiction to decide a case. *J.C.W.*, 275 S.W.3d at 253. To the contrary, "the courts of this state should confine their discussions of circuit court jurisdiction to constitutionally recognized doctrines of personal and subject matter jurisdiction...." *Id.; see Hendrix*, 183 S.W.3d at 590.

 These principles directly apply here. The petition to have Mr. Closser declared an SVP was filed in the probate division of the circuit court in which he was convicted or committed. That court has personal jurisdiction over him and subject matter jurisdiction to determine SVP proceedings. Secs. 632.486, 632.489, 472.020.[4] Accordingly, the circuit court had jurisdiction to proceed. Any failure by the department to comply with all statutory requirements in support materials provided with the notice it gave the attorney general is subject to analysis to determine whether that error caused a failure of proof, whether it was waived, whether it was prejudicial and similar issues. *See, e.g., Hendrix*, 183 S.W.3d at 590 (error in failing to hold hearing did not deprive court of jurisdiction and was waived by acquiescence of parties in submitting case on stipulated record that adequately pro-

---

3. The court's personal jurisdiction over Mr. Closser is not challenged.

4. RSMO 2000

vided court with sufficient evidence to determine issues).

## IV. THE LICENSING ERROR WAS NOT PREJUDICIAL AND WAS WAIVED

Mr. Closser alternatively argues that even if the error is not jurisdictional, it is fatal to the success of the petition because, absent a properly prepared end-of-confinement report by a Missouri-licensed psychologist, a condition precedent to the court's authority over the SVP proceeding is absent.

A "condition precedent" is "one . . . which is to be performed before some right dependent thereon accrues . . ." BLACK'S LAW DICTIONARY 293 (6th Ed.1990). Mr. Closser offers nothing to support his argument that having a report prepared by a Missouri-licensed psychologist is a condition precedent even to the attorney general filing a petition in the first instance, much less to the court determining the issues raised in the petition. While section 632.483 does state indirectly that the psychologist preparing the report "shall" have a Missouri license, "the use of 'shall' in a statute does not inevitably render compliance mandatory, when the legislature has not prescribed a sanction for noncompliance." *State ex rel. Fischer v. Brooks,* 150 S.W.3d 284 (Mo. banc 2004). Depending on context, "shall" may prescribe a mandatory duty, as in *State v. Teer,* 275 S.W.3d 258, 260–61 (Mo. banc 2009), but it may be considered only directory. *Id.* "[D]etermining if the word 'shall' is mandatory or directory requires courts to review the context of the statute and to ascertain legislative intent." *Id.*

Section 632.483 does not require that the end-of-confinement report even be filed with the court, much less that it is essential or its absence dispositive. Indeed, unless and until the attorney general files a petition to have a person declared an SVP under section 632.486, the matter is not a court proceeding. And even when the pretrial requirements of section 632.483 are considered, it is the department's statutory notice, not the content of the end-of-confinement report or the information in any of the other supporting documents to be provided with it, that begins the process of determining whether a petition will be filed in the first instance. This report is just one of a number of pieces of information that section 632.483 states the department shall transmit to the attorney general and the multidisciplinary committee. Among other matters to be transmitted are a list of identifying factors, anticipated future residence, offense history, documentation of treatment and similar matters. *Sec.* 632.483.2. An error in transmitting the person's address or various identifying factors, an error as to offense history, or a failure to include some piece of documentation regarding treatment, in submitting the initial notice to the attorney general, does not deprive a court of authority to proceed. Yet, if a lack of Missouri licensing of the psychologist who made the end-of-confinement report had that effect, why would not other technical errors in compliance with the statute?

This is not to suggest that such failures are not of importance and may not be prejudicial. Those charged with duties under the statute should attempt to fulfill all such duties. If they intentionally fail to do so, or if they fail to correct their error when it timely is brought to their attention, it would be appropriate to direct them to do so. But that does not make every error in fulfilling pretrial—in this instance, even pre-filing—requirements a condition precedent to action on a petition, any more than errors in holding a preliminary hearing deprive a court of authority to conduct the trial, or errors in holding an evidentia-

ry hearing deprive a court of authority to act in a dissolution proceeding. It simply means that the error may be waived, and if not waived the issue of prejudice becomes a factual one.

■ Here, Mr. Closser failed to raise the issue of Dr. Suire's license at the probable cause hearing or earlier, although a copy of the report was attached to the petition filed two months earlier. In the course of many motions for continuance and other motions he filed in the succeeding three years, he failed to raise this preliminary issue. Such conduct militates in favor of finding a waiver.[5]

■ Moreover, even if not waived, the Court cannot find that the licensing error was so prejudicial that it deprived the later actors of information necessary for a fair determination of Mr. Closser's designation as an SVP. Mr. Closser does not suggest that Dr. Suire was not otherwise qualified to render an opinion, and indeed he was licensed in Texas at the time of his report and received his Missouri license just a few months later. Further, after review of this report and the other information transmitted, the multidisciplinary committee determined that Mr. Closser *was not an SVP* and did not recommend that a petition be filed. This certainly weakens any argument that the substance of the report unfairly prejudiced Mr. Closser.

Equally importantly, neither a positive recommendation in the report nor by the multidisciplinary committee is essential even to the attorney general's decision whether to proceed with the filing of a petition. And the attorney general's filing just begins the court process. The court must hold a probable cause hearing, and if it finds probable cause, as it did here, then the detained person undergoes a new psychological evaluation as to whether he is an SVP. It is that evaluation, which was undertaken below and found Mr. Closser to fit the definition of an SVP, that supports further proceedings. The faulty end-of-confinement report essentially now has been supplanted by the new evaluation. Any errors in it, so long as the prosecution does not attempt to admit it at trial, could not be prejudicial. *See* sec. 632.489.4.

## V. CONCLUSION

For the reasons set out above, the lack of Missouri licensure by the psychologist who made the initial determination that Mr. Closser may meet the definition of an SVP did not deprive the trial court of jurisdiction to proceed on the petition later filed by the attorney general, nor did that error otherwise deprive the court of authority to act. The writ of prohibition is made absolute.

PRICE, TEITELMAN, RUSSELL, BRECKENRIDGE and FISCHER, JJ., concur; WOLFF, J., concurs in separate opinion filed.

MICHAEL A. WOLFF, Judge, concurring.

I concur with the principal opinion.

This case does, however, have two aspects that, taken together, may be worrisome. The first is that the multidisciplinary team's initial review of the records did

---

5. *See In Matter of Care and Treatment of Matthews*, 345 S.C. 638, 550 S.E.2d 311, 314–15 (2001), *cert. denied*, 535 U.S. 1062, 122 S.Ct. 1928, 152 L.Ed.2d 834 (2002) (trial within 60 days of a probable cause hearing is mandatory but not jurisdictional; by not filing a motion to dismiss, detainee waived right to challenge the state's noncompliance with the requisite time period). *See also Hendrix*, 183 S.W.3d at 590 (alleged procedural improprieties are not jurisdictional defects; rather they are error, which the court will review for waiver or prejudice).

not find that Closser fit the definition of a sexually violent predator. The second is that the state, for whatever reason, chose to use a psychologist not licensed in Missouri to do the crucial end-of-confinement evaluation.

The function of the multidisciplinary team, I assume, is to provide an informed assessment based in part on the expertise of the team members.[1] The team's assessment can be overridden by the prosecutors' committee, as it was in this case.[2] On a practical level, an assessment by prosecutors can answer the question of whether the state can "win" a commitment of the suspected sexually violent predator. This is an important assessment and—in light of the prosecutor's overriding duty to do justice and not just to win cases—can and should be a check to safeguard the rights of individuals against overzealous experts.

The expert's report, prepared by Dr. Suire—who held a Texas license and was in the process of obtaining a Missouri license—was one piece of evidence on the way to a proceeding to commit Closser as a sexually violent predator.

There is no indication whether Dr. Suire will be the state's expert at the civil commitment trial or whether the state will find another expert.

My concern is about what lawyers call "expert shopping." To be frank, lawyers often shop around for experts, not so much by what they know, but what they will say to support the theory of the case. Other professionals, especially medical professionals, can be heard to complain about the laxity of standards that allows for such expert shopping.

I am not so provincial as to suggest that only Missouri-licensed experts can be used, but I would ask: With more than 1,700 psychologists licensed to practice in Missouri, why does the state need to go elsewhere to find an expert? Perhaps there are experts around the country who can be relied upon to label—as sexually violent predators—sex offenders even where the evidence is thin or illusory. But that is where the expert-shopping question becomes troubling. The statute does not assume that every sex offender is a sexually violent predator. But, in the choice of experts, perhaps the prosecutorial system is making that assumption. The stakes, after all, are about a person's liberty and about the safety of our communities. These are not interests to be balanced, but are important values to be safeguarded.

The state probably now will bring before a jury an expert to say that Closser—who has a history of convictions: sex abuse (1990), child molestation and sexual misconduct (1997)—is a sexually violent predator. If the state does so, it is a fairly safe bet that Closser will not be seen at large anytime this century.

That may well be fine, if the system accurately identifies those who are permanently a risk to the well-being of children and other potential sex-offense victims. The statutes appear to be designed to protect against over-inclusion in the category of sexually violent predator. But, in practice, do the statutes function as they apparently are designed?

---

1. Section 632.483.2, RSMo Supp.2003.

2. Section 632.483.5, RSMo Supp.2003.