

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI EX REL )
CHRIS KOSTER, )
                                )    **WD77163 Consolidated with**
         Relator,          )    **WD77188**
                                  )
v.                                    )    **OPINION FILED: July 29, 2014**
                                  )
THE HONORABLE CYNTHIA )
SUTER, ASSOCIATE CIRCUIT )
JUDGE OF RANDOLPH COUNTY )
AND PEGGY BOOTS, CIRCUIT )
CLERK RANDOLPH COUNTY )
CIRCUIT COURT, )
                                  )
         Respondents.        )

## ORIGINAL PROCEEDING IN CERTIORARI

Before Writ Division: Gary D. Witt, Presiding Judge, Thomas H. Newton, Judge and
Cynthia L. Martin, Judge

This cause arises from a petition for writ of certiorari filed by Relator State of Missouri ("State") to review Respondent Honorable Cynthia Suter's ("Judge Suter") entry of a writ of habeas corpus to Joseph Thomas Bowen ("Bowen"), and a petition for writ of prohibition to review Judge Suter's accompanying dismissal of the State's petition to commit Bowen as a sexually violent predator ("SVP"). We issued a writ of certiorari and

a preliminary writ of prohibition and consolidated the writs for consideration. For the reasons set forth below, we quash the writ of habeas corpus and make our preliminary writ of prohibition absolute.

## FACTUAL AND PROCEDURAL HISTORY

This action arises in the midst of proceedings to civilly commit Joseph Thomas Bowen ("Bowen") as a sexually violent predator pursuant to Section 632.486.[1] On October 1, 2008, Bowen pleaded guilty to supplying liquor to a minor and to first-degree child molestation in the Circuit Court of Randolph County, case number 08RA-CR00592-01. At that time he admitted to supplying a twelve-year-old girl alcohol and then engaging in oral and vaginal intercourse with her. For the child molestation conviction, Bowen was sentenced on November 19, 2008 to five years' imprisonment under Section 559.115 (RSMo 2006), which included a 120-day assessment in the Sex Offender Assessment Unit ("SOAU").

Bowen participated in the SOAU program. The record includes a signed statement by Bowen agreeing to the terms of the program. The record also contains a "Court Report Investigation," dated March 5, 2009 that was generated by the Department of Corrections ("DOC") and filed March 12, 2009. That Court Report Investigation includes comments from a counselor with the Missouri Sexual Offender Services at the Farmington Correctional Center indicating that Bowen had "general life instability, a history of substance abuse, being intoxicated at the time of the offense[,] not seeing himself as a risk to sexually offend . . . no protective factors." That counselor concluded:

---

[1] All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

While he appears to be a somewhat high risk to reoffend, it also appears that much of his risk is dependent on his ability to stay sober. If he is not using drugs or alcohol, his risk may be lower. It appears that, in spite of this risk, that Mr. Bowen is a good candidate for community-based supervision and treatment.

After the counselor's statements, the same March 5, 2009 report then includes additional evaluative information as well as recommendations from a probation and parole officer with the SOAU. That portion of the report is titled "SOAU EVALUATION." The SOAU officer considered Bowen's record and recommended that probation be denied, with the following comments:

The SOAU clinician notes he scored within the medium high risk category on the Static-99.[2] Other test, file and interview data suggest this may be an underestimate of his risk. . . . This officer is concerned with public safety regarding Bowen's ability to not reoffend provided he remain substance free.

On March 18, 2009, following receipt of the DOC's Court Report Investigation, the court denied Bowen probation, concluding that it would be "an abuse of discretion to release" and ordered the execution of the five-year sentence pursuant to Section 559.115 (RSMo 2006), set out below. Bowen had never challenged this determination.

The record also contains a report written *after* Bowen was denied probation and almost seven months after he was originally sentenced. That report was dated June 4, 2009 and also was generated by the DOC. In the June 4, 2009 report, the DOC recommended that Bowen be granted probation effective September 22, 2010, stating that Bowen:

---

[2] The record indicates that an SOAU clinician noted that Bowen scored within the medium-high risk category on the Static-99, which "considers the presence of risk factors which have been empirically shown to correlate with increased risk of sexual reoffending recidivism."

3

was admitted to the Sex Offender Assessment Unit on 12-22-08 and successfully completed Phase I of the MOSOP[3] on 1-27-09. He did not incur any violations while in the program. According to the Court Report submitted on 03/05/09, he scored within the Medium-High Risk Category (Risk score=4) on the risks of sexual offending recidivism.

The record does not indicate what, if any, action occurred as a result of the June 4, 2009 report because it was generated after the plea court denied probation on March 18, 2009, the only probation determination relevant to the proceedings at bar.

On June 11, 2013, the State filed a petition to civilly commit Bowen as a SVP pursuant to Section 632.486, in case number 13RA-PR0005. In that petition, the State alleged that Bowen (1) had a prior conviction of a sexually violent offense, as defined by law, (2) is currently suffering from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if released, and (3) is anticipated to be released from confinement on June 13, 2013, and that sufficient evidence exists to determine whether he suffers from a mental abnormality that makes him more likely to engage in predatory acts of sexual violence. Attached to the State's petition was an End of Confinement Report. In that report, Bowen was described as admitting to "11 plus" additional victims and at one point informed a mental health professional that he would be a danger to the community and young girls if released.

Judge Suter made an initial determination that there was probable cause to believe that Bowen was an SVP pursuant to Section 632.489.1. Bowen was then provided notice of that determination and given the opportunity to challenge that determination at a later

---

[3] The State contends that the MOSOP program is a prison treatment program (and thus different from SOAU). The record is not developed on this matter, but it is not relevant to the disposition of the case.

4

hearing. On June 17, 2013, Judge Suter determined that there was probable cause to believe that Bowen was an SVP pursuant to Section 632.489.2.

Roughly six months later, on December 13, 2013, Bowen filed a motion to dismiss the petition to commit him civilly on the ground that the court lacked jurisdiction and statutory authority. The crux of Bowen's argument was that the State lacked authority under the SVP Act to file a petition because the DOC did not have jurisdiction over Bowen pursuant to Section 632.483. Bowen claimed in the motion that he was not lawfully in the custody of the DOC because the trial court in the underlying conviction did not conduct a hearing before exercising its discretion to deny him release on probation and executing his sentence. Specifically, Bowen alleged "successful completion" of a SOAU program and error in the plea court because he was not granted a hearing pursuant to Section 559.115.3. Bowen argued that such a hearing should have been conducted under Section 559.115.3 (RSMo 2006), which, as noted below, provides that "[i]f the court determines that probation is not appropriate, the court may order the execution of the offender's sentence only after conducting a hearing on the matter . . . ."

On December 18, 2013, the probate court heard arguments on the motion to dismiss. Judge Suter noted that "if a court that has jurisdiction over Mr. Bowen's conviction in Case No. 08RA-CR00592 says this -- his incarceration was invalid, I would find -- I would overturn my ruling in the probable cause statement, I would immediately release him."[4]

---

[4] Judge Suter thus appropriately recognized that section 632.486 does not afford the probate court the power or authority to entertain a collateral attack on the lawfulness of the defendant's underlying confinement.

The next day, December 19, 2013, Bowen filed a petition for writ of habeas corpus in the Circuit Court of Randolph County, which Judge Suter also presided over. Bowen collaterally contested confinement based on the same ground he raised in the motion to dismiss in the probate court, which was that he "was never under the jurisdiction of the Department of Corrections following his conviction in the criminal case because the criminal trial court acted in excess of statutory authority, and without jurisdiction, in denying Mr. Bowen's probation and in executing his sentence in the criminal case."

On January 14, 2013, the habeas court granted the writ of habeas corpus and ordered Bowen released from custody. In granting relief, the habeas court determined that Bowen's detention was "illegal" because the State did not have "statutory authority to file its petition seeking civil commitment." The habeas court thus concluded there was "no legal cause shown for the restraint" of Bowen and accordingly directed his release.

The State filed its petition for writ of certiorari in this Court, WD 77163. We granted the preliminary writ of certiorari and ordered a stay of Bowen's release pending a review of the issues raised in the habeas action. Shortly after we granted the preliminary writ on January 14, 2014, the probate court, apparently not in receipt of our preliminary writ, dismissed the SVP case based on the motion to dismiss and ordered Bowen released. The State filed a writ of mandamus or prohibition related to the motion to dismiss in this Court, WD 77188. We issued a second stay, staying the release of Bowen pursuant to the order of the probate court. Notwithstanding the issuance of our stay orders, Bowen was released.

6

Soon thereafter, in an attempt to comply with our stay orders, the probate court issued a warrant to return Bowen to the custody of the Randolph County sheriff. On January 16, 2014, this warrant was executed in Greene County, and Bowen was taken into custody by the Greene County Sheriff. On January 16, 2014, Bowen filed a petition for a writ of habeas corpus in the Circuit Court of Greene County challenging the lawfulness of his confinement. The Circuit Court of Greene County granted the writ and ordered Bowen released on January 17, 2014. That same day, the State filed a writ of certiorari in the Southern District of this Court, which was granted along with a stay of the release of Bowen pending resolution of that matter. On March 17, 2014, the Southern District of this Court issued its opinion quashing the writ of habeas corpus issued by Greene County and finding, among other things, that the order dismissing the State's SVP petition in the Circuit Court of Randolph County was not a final judgment. *State ex. rel. Koster v. Fitzsimmons*, 425 S.W.3d 166 (Mo. App. S.D. 2014). No review of the decision of our colleagues on the Southern District was sought by either party and any issues decided therein are not properly before us. Bowen ultimately was returned to the Randolph County jail, where he remains.

## ANALYSIS

In this consolidated action, the State raises two points. In its first point, the State argues that it is entitled to a permanent order prohibiting Judge Suter from dismissing the SVP case for lack of jurisdiction and statutory authority because "a dismissal is an abuse of the probate court's discretion, exceeds the probate court's authority, and would cause irreparable harm" in that, *inter alia*, the motion to dismiss the SVP action was based on

7

an untimely collateral attack on the underlying conviction. In its second point, the State argues that it is entitled to have the writ of habeas corpus quashed in part because the "probate court was not required or authorized to collaterally review the conviction, sentence, and execution of sentence of the underlying criminal offense before obtaining jurisdiction, finding probable cause, and issuing the detention order."

## Discussion

In both his motion to dismiss and his petition for writ of habeas corpus, Bowen challenged his confinement (and therefore his eligibility to be civilly committed) under the theory that the plea court erred in failing to hold a hearing before denying probation in his underlying criminal case. However, regardless of the means of the challenge, because the grounds under either form of relief are without substance as a matter of law, the State is entitled to the relief it requests.[5]

Understanding the error begins with Section 559.115.3 (RSMo 2006):

> Upon *successful completion* of a treatment program, the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. The court shall release the offender unless such release constitutes an abuse of discretion. If the court determined that there is an abuse of discretion, the court may order the

---

[5] We question, without resolving, whether Bowen's actions could succeed on procedural grounds. First, Bowen sought a writ of habeas corpus questioning his confinement on the ground that the plea court did not afford him a proper hearing on the issue of the grant or denial of probation. An attack on a probationary ruling does not constitute a challenge to a sentence and is therefore beyond the scope of a post-conviction relief proceeding. *Prewitt v. State*, 191 S.W.3d 709, 711 (Mo. App. W.D. 2006); *Green v. State*, 494 S.W.2d 356, 357 (Mo. banc 1973); *Hogan v. State*, 755 S.W.2d 27, 28 (Mo. App. S.D. 1988). Though habeas relief is available to challenge the imposition of an unlawful sentence, no Missouri court has previously determined that the denial of a hearing before denying probation is the functional equivalent of an unlawful sentence. In fact, on prior occasions where the issue raised by Bowen has been addressed by our Supreme Court, it has been in response to a writ of mandamus. *See State ex rel. Valentine v. Orr*, 366 S.W.3d 534, 538 (Mo. banc 2012); *State ex rel. Mertens v. Brown*, 198 S.W.3d 616, 618 (Mo. banc 2006). Bowen also filed a motion to dismiss in the probate court asking that court to dismiss the SVP petition because of the allegedly unlawful nature of his underlying confinement. Section 632.484.1 does not authorize such examination, and Bowen cites no authority authorizing the probate court to collaterally attack the final judgment entered by the circuit court in Bowen's underlying criminal matter.

execution of the offender's sentence ***only after conducting a hearing*** on the matter within ninety to one hundred twenty days of the offender's sentence.

\* \* \*

If the department determines that an offender is ***not successful*** in a program, then after one hundred days of incarceration the circuit court shall receive from the department of corrections a report on the offender's participation in the program and department recommendations for terms and conditions of an offender's probation. The court shall then release the offender on probation or order the offender to remain in the department to serve the sentence imposed.

(Emphases added.)

In arguing to the habeas court that his confinement was unlawful, Bowen relied on the language of Section 559.115.3 and *State ex rel. Valentine v. Orr*, 366 S.W.3d 534 (Mo. banc 2012). The relevant portion Section 559.115.3 states that where the court determines there is an abuse of discretion in the department's recommendation of probation, "the court may order the execution of the offender's sentence ***only after conducting a hearing on the matter***." (Emphasis added.) In *Valentine*, after completion of the SOAU program, the SOAU issued a report indicating that the petitioner seemed amenable to treatment within his community and recommended that the circuit court grant him probation. *Id.* at 537. The circuit court, however, was tardy in holding a hearing to determine whether granting release was an abuse of discretion. *Id.* at 541. The *Valentine* court held that the circuit court's hearing out of time meant that it lacked any authority to enter its judgment denying probation. *Id.* "Once judgment and sentencing occur in a criminal proceeding, the trial court has exhausted its jurisdiction." *Id.* "It can take no further action in that case except when otherwise expressly provided by statute or rule." *Id.* (quoting *State ex rel. Mertens v. Brown*, 198 S.W.3d 616, 618

9

(Mo. banc 2006) (issuing writ of mandamus directing respondent to place petitioner on probation where petitioner had successfully completed the program and respondent had denied probation without hearing). The *Valentine* court thus granted the petitioner's writ of mandamus, holding that the trial court lacked jurisdiction to deny release after it failed to conduct a hearing within 120 days of sentence to determine whether recommendation for release was an abuse of discretion.

On the other hand, where the DOC determines that an offender is "not successful" in a program, the court is not required to hold a hearing before denying probation. Section 559.115.3 states instead that where the DOC determines that an offender is "not successful," then it shall issue a report, at which point the court shall release the offender on probation or order the offender to serve the sentence imposed. This provision was triggered in *Woods v. State*, 371 S.W.3d 928, 930 (Mo. App. S.D. 2012). There, the Court Investigation Report did not contain any recommendation of probation, nor did the report state that the movant successfully completed the SOAU program. Also, it was "clear from the report that the Probation Officer and Unit Supervisor recommended that probation be denied." *Id.* at 929. Under these facts, the *Woods* court concluded that the "plea court was not thereby compelled to conduct a hearing within 90 to 120 days of Movant's sentence before ordering the execution of the sentence." *Id.* at 930 (citation omitted).

In this case, similarly, we are not directed to any statement in the record indicating that the DOC determined that Bowen had successfully completed the institutional treatment program. It is true that one counselor noted that "[*i*]*t appears that*, in spite of

10

this risk, that Mr. Bowen is a good candidate for community-based supervision and treatment"; however, in the "SOAU EVALUATION" portion of the DOC's Court Report Investigation, the Probation and Parole Officer with the SOAU unit unequivocally recommended that probation be denied. (Emphasis added.) Given the SOAU's position, there is no indication, therefore, that the SOAU determined that Bowen "successfully completed" the program. Bowen acknowledged at oral argument that there was no document in the court file which directly stated that he had successfully completed the program by DOC and that his argument was based upon the conduct of the parties: he argues that the parties behaved as though they believed that he had successfully completed the program.

Even if the March 5, 2009 report could be construed as a successful completion of the SOAU program, however, the statute only mandates a hearing to determine whether the DOC's recommendation of probation constitutes an abuse of discretion. Specifically, the statute states that upon successful completion, the board shall advise the sentencing court of an offender's probationary release and that the court shall release the offender "unless such a release constitutes an abuse of discretion." § 559.115.3 (RSMo 2006). However, "if the court determined that there is an abuse of discretion, the court may order the execution of the offender's sentence *only after conducting a hearing* on the matter within ninety to one hundred twenty days of the offender's sentence." Despite one counselor's comments that "[i]t appear[ed] that" release was appropriate, the probation and parole officer with the SOAU definitively did not recommend probation. Under the plain language of the statute, no hearing was necessary.

Therefore, as a matter of law, the record indicates that Bowen failed to establish that his incarceration was illegal or that there was any jurisdictional defect or lack of statutory authority to detain him so as to warrant relief under either a writ of habeas corpus or a motion to dismiss. There was insufficient evidence to support habeas relief. *State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 518 (Mo. banc 2001) ("The sufficiency of the evidence to support the habeas writ is a question of law. . . . "). The accompanying grant of the motion to dismiss the SVP petition was therefore also erroneous. *State ex rel. State v. Campbell*, 386 S.W.3d 229, 234 (Mo. App. W.D. 2012) (holding that prohibition is available when a circuit court acts in clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated); *State ex rel. State v. Parkinson*, 280 S.W.3d 70, 77 (Mo. banc 2009) (holding that prohibition is appropriate where a trial court has erroneously granted an inmate's motion to dismiss in an SVP case).

## CONCLUSION

The writ of habeas corpus is quashed and our preliminary writ of prohibition prohibiting the probate court from dismissing the SVP action in reliance on the writ of habeas corpus is made absolute.

_____
Gary D. Witt, Judge

All concur

12