

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF DANIEL J. JENSEN, | WD82836 |
| Appellant, | OPINION FILED: |
| v. | August 18, 2020 |
| STATE OF MISSOURI, | |
| Respondent. | |

**Appeal from the Circuit Court of Randolph County, Missouri**
**The Honorable David Craig Mobley, Judge**

**Before Division Three:**
**Gary D. Witt, P.J., Lisa White Hardwick, and Thomas N. Chapman, JJ.**

Following a jury trial, Daniel Jensen appeals the judgment of the circuit court adjudging him to be a sexually violent predator and ordering him to be committed to the custody of the Department of Mental Health and confined in a secure facility until such time as his mental abnormality is so changed that he is safe to be at large. Finding no error, we affirm.

*Facts & Procedural Background*[1]

In 1993, Daniel Jensen (who was living in California at the time) reported to his mother that he had molested two boys. Jensen was either 15 or 16 years old at the time, and the boys (who were brothers) were 9 and 10 years old. Jensen's mother took him to a police station where Jensen and the two victims were questioned. Jensen described the acts of molestation, as did the victims. Jensen was charged with two counts of "molest a child" in California, and was apparently convicted on at least one of those counts.[2] He was sentenced to a term of probation which terminated in 1998.

Jensen subsequently moved to Moberly, Missouri, with his son, A.J., who was born in 1999. A.J. suffered from various medical problems and was cognitively delayed as the result of a birth defect. Jensen began sexually abusing A.J. when he was two years old. Jensen placed his mouth on A.J.'s penis, inserted items in A.J.'s rectum, and had A.J. insert items in Jensen's rectum. Jensen would also take sexually explicit pictures of his son and use the "photographs to trade for child pornography on the internet." The abuse came to the attention of the Moberly Police Department when, in 2004, the father of one of A.J.'s friends reported that he had observed A.J. (age 4 at the time) engaging in sexual behavior with the man's son; that A.J. had requested sexual contact from the man himself; and that A.J. had told the man's son that he had engaged in sexual behavior with Jensen. Jensen was subsequently arrested. In July 2004, he pled guilty to one count of child molestation in the first degree and one count of incest. He was

---

[1] "We view the record most favorably to the judgment, disregarding all contrary evidence and inferences[.]" *Turner v. State*, 341 S.W.3d 750, 753 (Mo. App. S.D. 2011) (internal quotes and citation omitted).

[2] Testimony at trial indicated that the records pertaining to Jensen's California juvenile adjudication were unclear or incomplete in certain respects.

sentenced to consecutive prison terms in the Missouri Department of Corrections (MDOC) of 14 years for first-degree child molestation and 4 years for incest.

While serving his sentences, Jensen enrolled in the Missouri Sex Offender Treatment Program (MOSOP). MOSOP is a "cognitive behavioral treatment program" that is designed to reduce the risk of recidivism after a sex offender is released from prison. MOSOP requires participants to maintain a log of fantasies they are entertaining while enrolled in the program. Jensen's fantasy log indicated that he had been having sexual fantasies involving A.J., young girls, and a foster sister.[3] Additionally, he disclosed experiencing sexual urges caused by listening to other sex offenders describe their abuse of children. Jensen was also required to complete a sexual victim disclosure history. In the disclosure, Jensen indicated that he had viewed pornography depicting children between the ages of 2 and 16 years old. He revealed that "he liked children that were flat-chested and he liked the way that they smiled." He also provided a disclosure purporting to describe the sexual acts he committed against the two brothers in California, as well the sexual abuse he inflicted on his son.

In July 2017, Jensen was evaluated by Dr. Nena Kircher to determine whether he met the definition of a sexually violent predator (SVP) as defined in section 632.480, RSMo 2016. Dr. Kircher prepared an End of Confinement Report in which she summarized the findings of her evaluation. Her report indicated that Jensen was scheduled to be released from the MDOC on November 24, 2017. Dr. Kircher diagnosed Jensen with "Sexual Sadism Disorder, in a controlled environment" and "Pedophilic Disorder, Sexually Attracted to Both, Non-Exclusive Type." Dr. Kircher noted that Jensen's "history demonstrate[d] a long-term pattern of sexual

---

[3] The transcript indicates that Jensen was accused of having "contact" with his 11-year-old foster sister when Jensen was 15 years old.

3

attraction to prepubescent children" and that Jensen "continue[d] to experience intrusive fantasies related to the deviant attraction patterns." In addition, Dr. Kircher observed that Jensen's accounts of his own acts of predation had repeatedly changed and that he appeared preoccupied with "'say[ing] the right thing[,]' suggesting a low level of commitment to genuine behavior change." Dr. Kircher concluded her report by opining that Jensen did meet the statutory definition of an SVP and referred his case to the multidisciplinary team.[4] The multidisciplinary team similarly concluded that that Jensen "appear[ed] to meet the definition of [an SVP]," and the prosecutor's review committee reached the same conclusion.

In August 2017, the State of Missouri filed a petition in the Circuit Court of Randolph County, Missouri, against Jensen, alleging that he was suffering from a mental abnormality

---

[4] Section 632.483, RSMo 2016, prescribes a multistep process which the MDOC must follow when it determines that an individual appears to meet the definition of a sexually violent predator:

> 1. When it appears that a person may meet the criteria of a sexually violent predator, the agency with jurisdiction shall give written notice of such to the attorney general and the multidisciplinary team established in subsection 4 of this section. …
>
> 4. The director of the department of mental health and the director of the department of corrections shall establish a multidisciplinary team consisting of no more than seven members, at least one from the department of corrections and the department of mental health, and which may include individuals from other state agencies to review available records of each person referred to such team pursuant to subsection 1 of this section. The team, within thirty days of receiving notice, shall assess whether or not the person meets the definition of a sexually violent predator. The team shall notify the attorney general of its assessment.
>
> 5. The prosecutors coordinators training council established pursuant to section 56.760 shall appoint a five-member prosecutors' review committee composed of a cross section of county prosecutors from urban and rural counties. No more than three shall be from urban counties, and one member shall be the prosecuting attorney of the county in which the person was convicted or committed pursuant to chapter 552, if the conviction was in this state. The committee shall review the records of each person referred to the attorney general pursuant to subsection 1 of this section. The prosecutors' review committee shall make a determination of whether or not the person meets the definition of a sexually violent predator. The determination of the prosecutors' review committee or any member pursuant to this section or section 632.484 shall not be admissible evidence in any proceeding to prove whether or not the person is a sexually violent predator. The assessment of the multidisciplinary team shall be made available to the attorney general and the prosecutors' review committee.

which made it more likely than not that he would "engage in predatory acts of sexual violence" if released from confinement. In its petition, the State sought a determination as to whether Jensen was an SVP. The State requested further that (if it found him to be an SVP) the circuit court order Jensen to be "committed to the custody of the Department of Mental Health in a secure facility for control, care and treatment until such time as his mental abnormality has so changed that he is safe to be at large."

Jensen was terminated from MOSOP in September 2017 after participating in the program for 327 days. The reasons cited for his termination included tardiness, failing to provide complete information, lying, and an unwillingness to change. In particular, MOSOP records indicated that Jensen was not being forthcoming when describing the sexual fantasies he was entertaining while enrolled in the program. On September 27, 2017, Jensen's anticipated date of release (November 27, 2017) was canceled; and he was rescheduled for release on his "maximum release date" of March 24, 2022.

In November 2017, Jensen filed a motion to dismiss, which posited that, because the State had filed the commitment petition more than 360 days in advance of his amended date of release, the petition was premature and that the circuit court therefore lacked jurisdiction to hear the case.

The circuit court denied Jensen's motion to dismiss, and the case proceeded to a jury trial in December 2018. The State offered the testimony of Dr. Lisa Mathews, a licensed psychiatrist with the Missouri Department of Mental Health. Dr. Mathews diagnosed Jensen with pedophilic disorder, a mental abnormality[5] which she defined as follows:

---

[5] Dr. Mathews proffered the following definition for the terms "mental abnormality": "A congenital or acquired condition affecting the emotional or volitional capacity that predispose a person to commit sexually violent offenses

5

[DR. MATTHEWS]: So pedophilic disorder is when a person has an intense and persistent sexual interest in children. It is manifested by fantasies, urges, and behaviors. There is also a requirement that it be present for at least six months and there are specific requirements around age. So the person has to be 16 years of age and there has to be at least five years of difference between the person and the child. Lastly, the person either has to have acted on those fantasies and urges, so they have some type of behavior or they have impairment from the fantasies, urges that they have.

Dr. Mathews indicated that Jensen fit this profile in that he had a history of engaging in sexual behavior with prepubescent children, that he continued to fantasize about children in the MDOC, and that he had a history of viewing child pornography. Dr. Mathews further testified that Jensen's mental abnormality "predispose[d] him to commit sexually violent offenses" and that the condition affected him to such an extent that he would have serious difficulty controlling his behavior. Dr. Mathews indicated that Jensen would more likely than not "commit acts of predatory sexual violence if not confined in a secure facility."

Dr. Kircher also testified during the State's case-in-chief. Dr. Kircher indicated that while enrolled in the MOSOP program, Jensen would engage in what she termed "impression management," which she described as an effort to "say the right thing" to appease his counselor rather than being totally honest. She also testified that Jensen's treatment was made difficult by his habit of providing inconsistent descriptions of his own deviant behavior. She indicated that Jensen did not consistently take responsibility for his actions, testifying that he would at times "acknowledge[] significant portions of what happened in a way that he was going to engage in treatment, and then at other times he was moving backward and not able to do that." Dr. Kircher observed that Jensen did "not have a realistic insight…into his deviance," that he had serious difficulty controlling his behavior, that he failed to demonstrate an understanding of the concepts

---

in a degree that causes the individual serious difficulty controlling his behavior."

being taught in the MOSOP program, and that he was "not really engaging" in sex offender treatment.

Dr. Kircher testified that Jensen was attracted to the innocence of children and that he perceived children as having a sexual interest in him. She diagnosed him with two mental abnormalities: pedophilic disorder and sexual sadism disorder, which she indicated is "a sexual attraction to the physiological or psychological suffering of another person." Dr. Kircher based her diagnosis of sexual sadism disorder upon statements made by A.J. that Jensen was laughing while A.J. was crying during an act of anal penetration, which she testified suggested that Jensen was deriving sexual gratification from his son's suffering.

In determining whether Jensen met the criteria of a sexually violent predator, Dr. Kircher relied upon the STATIC-99R, a scientifically accepted instrument that utilizes objective (or "static") factors in the individual's offense history to assess his risk of recidivism. Dr. Kircher assigned Jensen a score of 5 on the STATIC-99R, which suggested that his risk of recidivism was unusually high (higher than roughly 88.7% of similarly situated offenders). Dr. Kircher also employed the STABLE-2007, a second assessment tool which focuses on certain dynamic factors, such as the individual's "current relationships," "problem-solving and coping skills[,] and current sexual interests and arousal patterns" to predict his risk of reoffending. Out of a possible score of 26, Jensen received a score of 21 on the STABLE-2007 measure, which Dr. Kircher similarly described as "unusually high." Dr. Kircher testified that Jensen was "more likely than not to continue engaging in predatory acts of sexual violence unless confined to a secure facility."

After the State rested, Jensen proffered the testimony of his own expert, Dr. Luis Rosell. Dr. Rosell testified that although he believed Jensen was suffering from pedophilic disorder, he

7

did not believe that the disorder rose to the level of a mental abnormality. He further opined that Jensen was not a sexually violent predator. Jensen also testified on his own behalf. He described what he had learned during the time he was incarcerated and while he was enrolled in MOSOP. He did acknowledge that he had undergone treatment after committing sexual offenses as a juvenile in California and nevertheless reoffended after such treatment. He conceded further that he still required psychological treatment.

At the conclusion of the evidence, the jury found that Jensen was a sexually violent predator. The circuit court entered judgment, committing Jensen to the custody of the director of the Department of Mental Health and ordering that he be kept in a secure facility until his "mental abnormality is so changed that he is safe to be at large." This appeal follows.

### *Discussion*

"In order to have [Jensen] committed as a sexually violent predator, the State was required to prove that he had been convicted of an 'index' sexually violent offense and that he had a mental abnormality making him more likely than not to commit a future act of sexually predatory violence unless confined to the custody of the Department of Mental Health." *White v. State*, 576 S.W.3d 285, 292–93 (Mo. App. W.D. 2019) (citing § 632.480(5)). "An 'index' offense is the underlying sexually violent offense that provides the basis required for initiating an SVP proceeding." *Id*. at 292 n.5. In this case, it is undisputed that in July 2004, Jensen was convicted of child molestation in the first degree in Randolph County, Missouri, which section 632.480(4) defines as a sexually violent offense. The issue at trial was whether Jensen was suffering from a mental abnormality that made him more likely than not to commit a future act of predatory sexual violence unless confined in a secure facility.

8

In his first point on appeal, Jensen argues that the circuit court erred in denying his motion to dismiss the State's commitment petition. He asserts that section 632.483.1 requires the State to file a petition to commit a suspected SVP *within 360 days of his anticipated release date*;[6] that the State had filed its petition more than 360 days before his *new* anticipated release date; and that the State's petition was therefore filed prematurely. Because the State's filing was premature, Jensen's argument continues, the circuit court lacked "subject matter jurisdiction due to lack of ripeness" to hear the case.

Generally, "[o]ur review of the denial of a motion to dismiss, as part of the appeal from a final judgment, is … for abuse of discretion." *U.S. Bank, N.A. v. Coverdell*, 483 S.W.3d 390, 401 (Mo. App. S.D. 2015) (internal quotes and citation omitted). However, an appellate court's review is de novo when the appeal raises a question of law. *State v. Lybarger*, 165 S.W.3d 180, 184 (Mo. App. W.D. 2005). "Whether a judgment is void for lack of subject matter jurisdiction is a question of law that we review de novo." *Cmty. First Bank v. Hanifin*, 500 S.W.3d 881, 883 (Mo. App. W.D. 2016).

---

[6] Section 632.483.1 provides, in relevant part, as follows:

> 1. When it appears that a person may meet the criteria of a sexually violent predator, the agency with jurisdiction shall give written notice of such to the attorney general and the multidisciplinary team established in subsection 4 of this section. Written notice shall be given:

> (1) Within three hundred sixty days prior to the anticipated release from a correctional center of the department of corrections of a person who has been convicted of a sexually violent offense, except that in the case of persons who are returned to prison for no more than one hundred eighty days as a result of revocation of postrelease supervision, written notice shall be given as soon as practicable following the person's readmission to prison[.]

Thus, while Jensen's brief appears to suggest that the 360-day timeframe applies to the filing of the State's petition, the statute actually requires "the agency with jurisdiction" to provide the attorney general and multidisciplinary team written notice that an offender appears to meet the criteria of an SVP within 360 days of his anticipated release date.

9

"Subject matter jurisdiction" is a matter of "the court's authority to render a judgment in a particular category of case." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). "[T]he subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution. Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal….'" *Id.*

In *State ex rel. State v. Parkinson*, 280 S.W.3d 70 (Mo. banc 2009), the Missouri Supreme Court addressed subject matter jurisdiction to hear an SVP commitment petition. In that matter, Richard Closser had been convicted of child molestation and sexual misconduct. *Id.* at 72. Shortly before his scheduled release from prison, the MDOC provided notice to the attorney general and the multidisciplinary team that Closser appeared to meet the definition of an SVP. *Id.* at 73-74. Closser's end-of-confinement report had been prepared by a Texas-licensed psychologist who had not yet received his Missouri licensure at the time he authored the report. *Id.* at 74. Years after the State filed its petition to commit Closser in a secure facility, he filed a motion to dismiss, arguing that the State failed to comply with statutory procedure in that his end-of-confinement report had been written by a psychologist who had not yet received his Missouri license. *Id.* "The trial court agreed that this deficiency deprived it of jurisdiction to proceed and dismissed the petition." *Id.* at 72. The State sought a writ of prohibition from the Missouri Supreme Court. *Id.*

The Supreme Court indicated that the requirements prescribed in section 632.483 are not jurisdictional. *Id.* at 75. The Court reasoned "that it would 'rob[ ] the concept of subject matter jurisdiction of the clarity that the constitution provides' were any error in following a statute's

10

requirements considered to deprive a court of jurisdiction to decide a case." *Id.* (quoting

*Wyciskalla*, 275 S.W.3d at 253). Thus, the Supreme Court held as follows:

> The petition to have Mr. Closser declared an SVP was filed in the probate
> division of the circuit court in which he was convicted or committed. That court
> has personal jurisdiction over him and subject matter jurisdiction to determine
> SVP proceedings. Secs. 632.486, 632.489, 472.020. Accordingly, the circuit court
> had jurisdiction to proceed. Any failure by the department to comply with all
> statutory requirements in support materials provided with the notice it gave the
> attorney general is subject to analysis to determine whether that error caused a
> failure of proof, whether it was waived, whether it was prejudicial and similar
> issues.

*Id.*

As in *Parkinson*, the State's purported failure to follow the requirements enumerated in

section 632.483 would not deprive the circuit court of subject matter jurisdiction to hear the SVP

proceedings against Jensen. Having determined that the circuit court had jurisdiction to hear the

instant case, we proceed to a consideration of whether it committed prejudicial error (albeit *non-*

*jurisdictional* error) in doing so.

Jensen argues that the State's commitment petition was not "ripe" for judicial

determination because "the drafters of § 632.480, et seq., intended that civil commitment

proceedings for allegedly violent sexual offenders would occur shortly before and in tandem

with their release from the Department of Corrections." This contention is unavailing for the

simple reason that it is at odds with the plain language of section 632.483.1(1), which provides:

> When it appears that a person may meet the criteria of a sexually violent predator,
> the agency with jurisdiction shall give written notice of such to the attorney
> general and the multidisciplinary team … *[w]ithin three hundred sixty days prior*
> *to the anticipated release* from a correctional center of the department of
> corrections of a person who has been convicted of a sexually violent offense….

(emphasis added). "It is without cavil that where statutory language is clear, unambiguous, and

admits of only one meaning, there is no room for construction and the legislature is presumed to

11

have intended what the statute says." *Corvera Abatement Techs., Inc. v. Air Conservation Comm'n*, 973 S.W.2d 851, 858 (Mo. banc 1998). "Where a statute's plain meaning is clear, courts must resist the urge to divine a legislative intent that confers some other meaning." *Hoeft v. True Mfg. Co., Inc.*, No. ED 108292, 2020 WL 3422649, at *3 (Mo. App. E.D. June 23, 2020). The statute clearly mandates that notice be given to the attorney general and the multidisciplinary team within 360 days of the individual's *anticipated release*, not his *guaranteed* (or actual) release date. Had the General Assembly intended the latter interpretation, it would have included express language to that effect.

Here, the MDOC determined in July 2017 that Jensen appeared to meet the statutory criteria of an SVP. It provided notice to the multidisciplinary team and the attorney general within 360 days prior to Jensen's anticipated release date, which, at the time, was November 24, 2017. *See* § 632.483.1(1). Within 45 days of receiving notice of the MDOC's SVP determination, the attorney general filed its commitment petition in August 2017. § 632.486, RSMo 2016. The petition was filed in the Probate Division of the Circuit Court of Randolph County, Missouri, which is the county where Jensen was convicted of first-degree child molestation. *Id*. The statutory notice and filing requirements were therefore satisfied. We see nothing in the relevant statutes that would subject the State's properly filed commitment petition to attack based on the Department of Corrections' *subsequent* decision to cancel Jensen's anticipated release date. The circuit court did not commit legal error (jurisdictional or otherwise) or abuse its discretion in denying Jensen's motion to dismiss the State's commitment petition.

Jensen's first point on appeal is denied.

In his second point on appeal,[7] Jensen argues that the verdict form and companion instruction that were submitted to the jury at his trial violated his statutory right to a unanimous verdict.

> The standard of review in order to reverse on grounds of instructional error is such that the party claiming the instructional error must establish the instruction at issue misdirected, misled, or confused the jury. Additionally, prejudice must have resulted from an instructional error. Whether a jury was instructed properly is a question of law this Court reviews *de novo*.

*SKMDV Holdings, Inc. v. Green Jacobson, P.C.*, 494 S.W.3d 537, 553 (Mo. App. E.D. 2016) (internal citations omitted).

At trial, Jury Instruction No. 6 provided as follows:

> If you believe the evidence clearly and convincingly establishes:
>
> First, that the respondent was found guilty of child molestation first degree in the Circuit Court of Randolph County, State of Missouri, and
>
> Second, that the offense for which the respondent was convicted was a sexually violent offense, and
>
> Third, that the respondent suffers from a mental abnormality, and

---

[7] Jensen's second point on appeal provides:

> The trial court plainly erred when it failed to submit verdict form I [sic] in conjunction with verdict director 6, which required the jury to state which mental abnormality or abnormalities they found required Mr. Jensen. [sic] to be remanded to the care and treatment of the Department of Mental Health. RSMO 632.495 requires a unanimous verdict on the part of the jury. Without knowing what mental abnormality the jury agreed Mr. Jensen suffered from, or if they unanimously agreed on any mental abnormality, it is impossible to know if their verdict was, in fact, unanimous. This was error because this ruling denied Mr. Jensen his due process rights to a fair trial, present a defense, and a unanimous verdict guaranteed by U.S. Const. amend. XIV and Mo. Const. art. I, §10 and RSMO 632.495, in that what, if any, mental abnormality DJ. [sic] suffered from was a central issue in this case, and but for the possibility of a non-unanimous finding, Mr. Jensen was reasonably likely to have not been found to be a [sic] SVP.

This point is not written in the form mandated by Rule 84.04(d) and misstates our standard of review. "Deficient points relied on preserve nothing for this court to review and are grounds for dismissal on appeal." *Nicholson v. Transamerica Occidental Life Ins. Co.*, 144 S.W.3d 302, 306 (Mo. App. W.D. 2004) (internal quotes and citation omitted). "While the failure to comply with Rule 84.04 warrants dismissal, we prefer to dispose of a case on the merits if we can discern the argument being made." *Ward v. Div. of Emp't Sec.*, 600 S.W.3d 283, 287 (Mo. App. W.D. 2020). Because we can readily discern Jensen's argument, we have chosen to review his point ex gratia.

Fourth, that this mental abnormality makes the respondent more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility,

Then you will find that the respondent is a sexually violent predator.

However, unless you find and believe the evidence has clearly and convincingly established each and all of these propositions, you must find the respondent is not a sexually violent predator.

As used in this instruction, "sexually violent offense" includes the offense of child molestation first degree.

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior.

As used in this instruction, "predatory" means acts directed towards individuals, including family members, for the primary purpose of victimization.

Instruction No. 4 advised the jury that "[t]he verdict must be unanimous and must be signed by each juror." After it was completed by the jury, the verdict form (which was signed by all 12 jurors) read as follows:

Note: Complete this form by filling in the word or words required by your verdict.

We the jury find the respondent Daniel Jensen is … a sexually violent predator.

At the instruction conference, Jensen offered his "VERDICT No. 1," which provided as follows:

We, the jury, find that respondent suffers from _____ (enter diagnosis or diagnoses) which is a mental abnormality as defined under Instruction No. _____.

The circuit court rejected the proposed verdict form. Jensen argues on appeal (as he did at trial) that this verdict form was necessary because the State presented evidence of different mental abnormalities (i.e., pedophilic disorder and sexual sadism disorder). He contends that some of

14

the jurors could have found that Jensen suffered from pedophilic disorder, but not sexual sadism disorder, while others could have found that Jensen was suffering from sexual sadism disorder, but not pedophilic disorder.  Thus, he asserts that the circuit court failed to properly instruct the jury and deprived him of his right to a unanimous verdict.

Section 632.480(5) defines a "sexually violent predator" as

any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who … [h]as pled guilty or been found guilty in this state or any other jurisdiction, or been found not guilty by reason of mental disease or defect pursuant to section 552.030, of a sexually violent offense[.]

Section 632.495.1 provides that when an SVP determination is "made by a jury, such determination shall be by unanimous verdict of such jury."

Jensen's argument was recently addressed and rejected by our Supreme Court in *In re D.N.*, 598 S.W.3d 108 (Mo. banc 2020).  There, D.N. "was convicted in 2005 of felony sex abuse of his mentally disabled sister-in-law, and the circuit court imposed a 15-year sentence." *Id*. at 113.  At the end of his sentence, he was evaluated by a psychologist for the MDOC, who determined that he appeared to meet the statutory definition of an SVP.  *Id*.  The State filed a petition seeking to have him committed in a secure facility as an SVP.  *Id*.  At trial, the State's expert, a forensic clinical psychologist, "diagnosed [D.N.] with three disorders: 1) pedophilic disorder, sexually attracted to males, nonexclusive type; 2) other specified paraphilic disorder, nonconsensual sex; and 3) other specified personality disorder, antisocial personality." *Id*. at 114.

The circuit court submitted a verdict director that "required a finding by the jury that [D.N.] 'suffers from a mental abnormality' and 'that his mental abnormality makes [him] more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure

15

facility.'" *Id*. at 119. The jurors were also provided with an instruction requiring their verdict to be unanimous. *Id*. "The jury unanimously found by clear and convincing evidence that [D.N.] met the criteria for an SVP, and the circuit court entered an order committing him to DMH for control, care, and treatment." *Id*. at 114.

D.N. argued on appeal that the verdict director violated his right to jury unanimity because it "did not require the jury to identify the specific mental abnormality attributed to him." *Id*. at 119. The Supreme Court held that the SVP statutes require the jurors to unanimously agree that the individual suffers from a mental abnormality, but do not require them to agree upon a specific disorder:

> In this case, Instruction No. 6 required the jury to find that Offender "suffers from a mental abnormality" and that the mental abnormality makes him more likely than not to engage in sexually predatory acts. The instruction further defined "mental abnormality" consistent with the Act, which does not require the Offender to suffer from a specific mental abnormality. Section 632.480(2) requires a jury to find only the existence of a mental abnormality that increases Offender's likelihood of committing predatory acts of sexual violence, not unanimity on the precise nature of the abnormality. Instruction No. 6 did not create a risk that jurors would disagree as to an ultimate issue or element.

*Id*. at 120.

Consistent with *D.N.*, we find that the verdict form and verdict director submitted in this case did not violate Jensen's right to a unanimous verdict. The jurors were instructed that, in order to find that Jensen was an SVP, they had to unanimously agree that he suffered from a mental abnormality. The verdict director defined the phrase "mental abnormality" consistent with section 632.480(2). Under *D.N.*, the jury was not required to unanimously agree on the specific mental abnormality attributed to Jensen.

Point II is denied.

16

### Conclusion

The judgment of the circuit court is affirmed.

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

All concur.

17